STATE of North Dakota, Plaintiff
and Appellee,

v.

James William MURPHY, Defendant
and Appellant.

Cr. No. 930308.

Supreme Court of North Dakota.

May 19, 1994.

Alan S. Dohrmann (argued), Asst. State's Atty., Loralyn K. Clark, Third Year Law Student under Senior Practice Rule, Grand Forks, for plaintiff and appellee.

Robert J. Woods (argued), Forest River, for defendant and appellant.

NEUMANN, Justice.

A jury found James Murphy guilty of driving under the influence of intoxicating liquor, in violation of NDCC § 39–08–01. Arguing the jury instructions were faulty, Murphy appeals from the judgment of conviction. We affirm.

The facts are not in dispute. On May 23, 1993, the Grand Forks Police Department received a telephone call regarding a possible drunk driver. The call was placed to the police department by Dale Look, a resident of the city of Grand Forks.

Look had observed Murphy park a pickup in an alley in Grand Forks. Murphy got out of the vehicle and had difficulty walking. He then urinated by the garage. Look placed a telephone call to the Grand Forks Police Department to report the incident.

A few moments later, Officer Donald Beck of the Grand Forks Police Department arrived at the scene. Officer Beck did not observe anyone in the area at that time. He parked approximately one block from Murphy's vehicle and waited.

Shortly thereafter, Officer Beck observed Murphy driving the pickup west on 8th Avenue in Grand Forks. He began following the vehicle as it proceeded west. Officer Beck noticed the vehicle weaving on the street. He observed the vehicle make a right hand turn without a turn signal and a left hand turn without a turn signal.

At this point, Officer Beck activated his red lights indicating that he wanted Murphy to come to a stop. Murphy did not come to

an immediate stop, rather, he continued driving for approximately one-half block and turned into a driveway at a residence. Murphy stopped after he turned into the driveway.

Officer Beck detected an odor of alcohol about Murphy. He also noted bloodshot eyes and slurred speech. Further, he observed that Murphy had a difficult time walking and described his manner of walking as being "slow and deliberate."

Officer Beck arrested Murphy for driving under the influence of intoxicating liquor in violation of NDCC § 39–08–01, and informed him of his rights under *Miranda*. Murphy was transported to the Grand Forks County Jail where he was booked. While at the county jail, Officer Beck read the implied consent advisory to Murphy and asked him to submit to an Intoxilizer test for chemical testing. Murphy exercised his statutory right to refuse to submit to testing.

On September 14, 1993, a jury trial was held in the Grand Forks County Court. The jury found Murphy guilty of driving under the influence of alcohol. The court sentenced Murphy to 62 days in jail, $1,000.00 fine, and ordered an evaluation for chemical dependency. Murphy appeals from this judgment of conviction.

■ The issue on appeal is narrow in scope. Murphy argues that the trial court erred in instructing the jury on the issue of refusal to submit to a chemical test. He contends the jury should have been instructed that evidence of refusal is within the rights of the defendant, and may not be used to determine his guilt. We disagree.

■ The purpose of jury instructions is to apprise the jury of the state of the law. N.D.R.Crim.P.Rule 30(a). The court instructed the jury as follows:

"A person has a right under North Dakota law to refuse to submit to a chemical test for blood alcohol evaluation. Evidence regarding the fact that a chemical test for intoxication is refused to be taken by the Defendant is not sufficient, standing alone and by itself, to establish the guilt of the Defendant, but is a fact which, if proven, may be considered by you in light of all other proven facts in deciding the question of guilt or innocence."

North Dakota's implied consent law states:

"Any person who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcoholic, other drug, or combination thereof, content of the blood."

NDCC § 39–20–01. Consequences of refusing to take a test include revocation of driving privileges, *see generally* NDCC ch. 39–20 (implied consent chapter), and proof of refusal is admissible as evidence, NDCC § 39–20–08. Our law states:

"If the person under arrest refuses to submit to the test or tests, proof of refusal is admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person was driving or in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof."

NDCC § 39–20–08.

■ Murphy's argument carefully steers clear of constitutional issues.[1] Instead, he argues that the instruction allowing the jury to consider evidence of refusal in determining guilt contradicts the statutory right to

---

1. There is no Federal constitutional right to be entirely free of intoxication tests, *see Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood test taken against defendant's will did not violate due process under the Fourteenth Amendment, right against self-incrimination under Fifth Amendment, right to counsel under Sixth Amendment, and right from unlawful search and seizures under Fourth Amendment), and admission into evidence a defendant's refusal to submit to a test does not violate the Fifth Amendment right against self-incrimination, *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct 916, 74 L.Ed.2d 748 (1983). We distinguish this case from the recent case, *State v. Beaton* (Criminal No. 930322, filed 4/20/94), —— N.W.2d —— (N.D.1994), in which we addressed *Miranda*, and how it relates to refusal in implied consent cases.

refuse testing under § 39–20–04. Murphy's interpretation of § 39–20–08 would allow proof of refusal as evidence, but would not allow it to be considered in determining guilt. Murphy's proposed jury instruction read:

"You have heard evidence that Mr. Murphy refused to submit to a chemical test for blood alcohol analysis. You are instructed that such a refusal is within the statutory rights of the defendant and is not evidence of his guilt. You are not to consider such a refusal in determining the guilt or innocence of the defendant. A refusal alone is not sufficient to establish guilt beyond a reasonable doubt."

This proposed jury instruction conflicts with our reading of the implied consent law.

The essence of our implied consent laws is that the driver of a vehicle in North Dakota is deemed to have consented to submit to a chemical test if arrested for driving, or being in actual physical control while intoxicated. The fact that North Dakota drivers are able to refuse testing is a matter of legislative grace. *See South Dakota v. Neville,* 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (Fifth Amendment right against self-incrimination not violated by allowing evidence of refusal to be admitted in DUI proceedings); *but see State v. Neville,* 346 N.W.2d 425 (S.D.1984) (reversing on state constitutional grounds). Similar to South Dakota's implied consent law, North Dakota has declined to authorize its police officers to administer a blood alcohol test against a suspect's will. In order to avoid violent confrontations, § 39–20–04 provides a procedure for suspects that refuse to take the test.

Refusing to submit to the test is a legislatively granted privilege, and, as such, it is clear that the legislature is able to limit the extent of that privilege. *See Neville,* 459 U.S. at 565, 103 S.Ct. at 923 ("right to refuse the blood-alcohol test ... is simply a matter of grace bestowed by the South Dakota Legislature"). In this case, the North Dakota Legislature limited the privilege by attaching consequences to the act of exercising that privilege. *See* § 39–20–08 ("proof of refusal is admissible in any civil or criminal action"); § 39–20–04 (revocation of privilege to drive upon refusal to submit to testing).

Our interpretation of the implied consent laws is consistent with the legislature's desire for suspects to choose to take the test. Adoption of Murphy's interpretation would lessen the repercussions of not submitting to the test. After all, the inference of intoxication that arises from a positive test is much stronger than the inference arising from a refusal to take the test. *Neville,* 459 U.S. at 564, 103 S.Ct. at 922.

Section 39–20–08 of our implied consent laws is not ambiguous. An ordinary reading of the statute suggests evidence of refusal to take a test is relevant to some element of the crime of driving while intoxicated. *See State v. Haugen,* 448 N.W.2d 191, 195 (N.D.1989) (test as to whether evidence is relevant or not is whether it would reasonably and actually tend to prove or disprove any matter of fact in issue); *see also City of West Fargo v. Maring,* 458 N.W.2d 318 (N.D.1990) (legislative intent to admit evidence of any refusal in DUI and APC proceedings).

The jury instructions properly apprised the jury of the state of the law. We affirm the county court's judgment of conviction.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.