2008 ND 75

**Jason Reid GROSGEBAUER, Petitioner and Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

**No. 20070299.**

Supreme Court of North Dakota.

April 18, 2008.

Chad R. McCabe, McCabe Law Firm, Bismarck, ND, for petitioner and appellant.

Andrew Moraghan, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for respondent and appellee.

CROTHERS, Justice.

[¶ 1] Jason Grosgebauer appeals the district court's judgment affirming a North

Dakota Department of Transportation decision revoking Grosgebauer's driving privileges for three years because he refused a blood test. We conclude the Department's findings that Grosgebauer refused chemical testing and failed to cure the refusal are supported by a preponderance of the evidence. We affirm.

I

[¶ 2] On May 19, 2007, Grosgebauer was stopped for speeding and for crossing the center line. Grosgebauer exhibited signs of intoxication. Grosgebauer admitted having been at a bar and having drank "enough." Grosgebauer stated, "If you [ ] take me to the hospital for a blood test, I'm gonna fail." Grosgebauer failed field-sobriety testing and refused to take a preliminary breath test. He explained that he was concerned residual alcohol· in his mouth would result in a false positive because he had bleeding gums. Grosgebauer was arrested.

[¶ 3] The officer read Grosgebauer his Miranda rights, but Grosgebauer denied understanding the rights. The officer perceived Grosgebauer was "toying around" with him by feigning a lack of understanding. After arrest, the officer asked Grosgebauer to submit to a blood test. The officer read the implied consent advisory three separate times, and each time, Grosgebauer "kind of swore at [the officer] [and] kind of mumbled" in response. The officer told Grosgebauer if he did not consent to or refuse a blood test, that his mumbling and swearing would be interpreted as a refusal. Grosgebauer's response did not change. Grosgebauer claimed throughout these proceedings that his responses to the officer indicated he did not understand the implied consent advisory. Grosgebauer also offered that he has difficulty hearing when background noise is present and that he tends to "tune [things] out." Grosgebauer admitted he has not sought medical treatment for this malady.

[¶ 4] The officer stayed with Grosgebauer until turning him over to jail personnel. While waiting for jail personnel, the officer completed paperwork, provided Grosgebauer with water to drink and helped him make phone calls on Grosgebauer's cell phone. At some point during this waiting period, a corrections staff member asked if Grosgebauer needed a blood test. The officer responded that Grosgebauer had refused the blood test. Grosgebauer overheard this conversation and said words approximating "I did not refuse." The staff member who allegedly witnessed this comment did not testify at the administrative hearing. The officer then filled out a Report and Notice form indicating the refusal and handed it to Grosgebauer. Grosgebauer made no verbal or physical indication he was willing to take the blood test, even though the area where blood is drawn was visible and not far from where Grosgebauer was waiting.

[¶ 5] The Department of Transportation revoked Grosgebauer's license for three years for refusing the blood test. The Department found Grosgebauer had refused the initial preliminary breath test and the three requests for a blood test. The Department wrote in its decision, "While Grosgebauer's intentions may have been equivocal, his conduct was not." The Department also found Grosgebauer's later statement of "I did not refuse" did not indicate whether Grosgebauer was willing to take the blood test. "Grosgebauer gave no indication that he was then willing to take the blood test, either verbally or nonverbally." The Department determined there would have been sufficient time for the blood test if Grosgebauer had availed himself.

[¶ 6]  The district court affirmed the administrative decision.  Grosgebauer appeals, claiming he did not withdraw his implied consent and did not affirmatively refuse any of the tests.  Grosgebauer alternatively argues he cured any refusal when he declared, in the jailer's presence, "I did not refuse."

## II

[¶ 7]  When reviewing license suspensions under N.D.C.C. § 39–20–05, the record of the administrative agency is considered rather than the district court's ruling.  *N.D. Dep't of Transp. v. DuPaul*, 487 N.W.2d 593, 595 (N.D.1992).  The agency's decision must be affirmed unless:

"1) the decision is not in accordance with the law; 2) the decision violates the constitutional rights of the appellant; 3) provisions of the Administrative Agencies Practices Act were not complied with in the proceedings before the agency; 4) the agency's rules or procedures have not afforded the appellant a fair hearing; 5) the agency's findings are not supported by a preponderance of the evidence; or 6) the conclusions of law and the agency's decision are not supported by its findings of fact."

*Id.*  This Court considers "whether the agency reasonably reached its factual determinations by the greater weight of all the evidence."  *Id.*  "[W]hether or not [a defendant] refused to take [a chemical] test is a question of fact."  *Hammeren v. N.D. State Highway Comm'r*, 315 N.W.2d 679, 682–83 (N.D.1982).  Two questions are under consideration by this Court: first, whether a preponderance of the evidence supports the finding that Grosgebauer refused the blood test and, second, whether a preponderance of the evidence supports the finding that Grosgebauer did not effectively cure the refusal.

## A

[¶ 8]  Section 39–20–01, N.D.C.C., states, in pertinent part:

"Any person who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is *deemed to have given consent,* and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcohol, other drug, or combination thereof, content of the blood. . . .  The law enforcement officer shall also inform the person charged that refusal of the person to submit to the test determined appropriate will result in a revocation for up to four years of the person's driving privileges.  The law enforcement officer shall determine which of the tests is to be used."

(Emphasis added.)  A driver may not be tested against his will, and the Legislature has provided a procedure in N.D.C.C. § 39–20–04 for drivers to refuse testing.  *State v. Murphy*, 516 N.W.2d 285, 287 (N.D.1994).  The statutory right to refuse testing exists to avoid violent confrontations between drivers and police officers.  *Id.*  When a person refuses to be tested, his driver's license may be administratively revoked for a maximum of four years.  N.D.C.C. § 39–20–04.

[¶ 9]  Withdrawing the implied consent provided under N.D.C.C. § 39–20–01 requires an affirmative refusal to be tested.  *State v. Mertz*, 362 N.W.2d 410, 413–14 (N.D.1985).  Drivers who are unable to refuse by reason of being "dead, unconscious, or otherwise in a condition rendering the person incapable of refusal" may be tested, because they are "deemed not to have withdrawn [ ] consent."  N.D.C.C. § 39–20–03.  For those able to make a conscious decision, refusal does not

have to be explicitly stated; "stubborn silence" or a "physical failure to cooperate" may also indicate refusal. *Mayo v. Moore,* 527 N.W.2d 257, 260 (N.D.1995); *DuPaul,* 487 N.W.2d at 597.

[¶ 10] In *Mayo,* the driver did not explicitly refuse a test. 527 N.W.2d at 260. When asked to take the test, however, the driver physically turned away from the officer to face the wall and told the officer she could not hear him. *Id.* at 259. She asked, "why are you doing this to me?" *Id.* The officer warned her "if she did not do or say anything, he would mark it down as a refusal." *Id.* at 260–61. This Court concluded the administrative officer's finding of a refusal was supported by a preponderance of the evidence. *Id.* at 262. In *DuPaul,* a driver did not respond to whether he would test, but demanded to see a doctor and a lawyer. 487 N.W.2d at 595. This Court affirmed the Department's finding of a refusal stating, "[a]t no time did [the driver] agree to be tested after he had been advised of the consequences. The failure ... to respond after being requested to take a blood test and his response only of wanting a doctor and a lawyer constitutes a refusal to be tested." *Id.* at 597. The Court also acknowledged, "[t]he law does not authorize the driver to choose the specific test to be administered, nor to choose a specific person to administer the test." *Id.* Similarly, in *Obrigewitch v. Dir., Dep't of Transp.,* the driver "continually interrupted the police officer while the implied consent law was read" and responded to the officer's request to take the chemical test in "an obstreperous and evasive manner." 2002 ND 177, ¶ 14, 653 N.W.2d 73. The driver ignored the officer's request to take the chemical test for twenty to twenty-five minutes. *Id.* This Court upheld the Department's finding of a refusal. *Id.* at ¶ 15.

[¶ 11] These cases represent a tension inherent in our implied consent policy. Section 39–20–01, N.D.C.C., establishes that consent to testing is presumed. This presumption is tempered by legislative grace allowing a driver to opt out of testing. N.D.C.C. § 39–20–04. While consent may be the default legal position, in practice, the statutory scheme requires communication between the officer and the driver in which the officer requests submission to the test. *See Obrigewitch,* 2002 ND 177, ¶ 4, 653 N.W.2d 73 (officer attempted to "persuade" driver to submit to testing). The opportunity for a driver to refuse testing may be a practical necessity. *See Murphy,* 516 N.W.2d at 287. Nonetheless, this act of "legislative grace" should not be construed as giving drivers the ability to avoid the potential consequences of test submission and to avoid the penalties of refusal by remaining ambivalent. *See Krabseth v. Moore,* 1997 ND 224, ¶ 17, 571 N.W.2d 146.

[¶ 12] Ultimately, in cases like *Mayo, DuPaul, Obrigewitch* and here, whether a driver affirmatively refused to submit to testing is a determination of fact that is significantly reliant on the credibility of witnesses. Here, the Department considered testimony from both the officer and Grosgebauer and found "the trooper's testimony more credible." Each time the officer read the implied consent to Grosgebauer, "the response was the same: Grosgebauer swore at the officer and grumbled but *would not submit.*" (Emphasis added.) These circumstances are similar to those present in *Mayo* and *Obrigewitch,* and finding a refusal in such circumstances is consistent with our case law. Furthermore, the Department's factual finding of a refusal is supported by a preponderance of the evidence. While Grosgebauer claims a hearing loss and not understanding the implied consent, the Department did not find this compelling. His claimed inability

to understand the implied consent warning is unpersuasive, particularly given the officer's testimony that Grosgebauer "toy[ed]" with him by contending he also did not understand the Miranda warning. The hearing loss argument is also suspect because Grosgebauer never sought treatment for this condition, he apparently did not have difficulty hearing or understanding the conversation between the officer and jail personnel, and he did not appear to be affected by the condition at the administrative hearing. Under the applicable standard of review, the Department's finding of a refusal is affirmed.

B

[¶ 13] Grosgebauer alternatively argues even if he did refuse testing, he cured that refusal when he stated, "I did not refuse." Under *Lund v. Hjelle*, a driver is able to cure a prior refusal if he changes his mind and requests the test. 224 N.W.2d 552, 557 (N.D.1974). *Lund* states:

"[W]e hold that where, as here, one who is arrested for driving while under the influence of intoxicating liquor first refuses to submit to a chemical test to determine the alcoholic content of his blood and *later changes his mind and requests a chemical blood test,* the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest."

*Id.* (emphasis added). In *Lund,* the driver was arrested for driving under the influence. *Id.* at 554. Lund initially agreed to take a chemical test but refused once at the hospital. *Id.* Lund was taken to the police station where he was allowed to phone his insurance agent, who advised he submit to testing. *Id.* Lund's subsequent request for testing, occurring approximately an hour after his arrest, was denied. *Id.* at 554–55. This Court held the test should have been given, and the revocation of Lund's license was reversed. *Id.* at 556–57.

[¶ 14] To cure a prior refusal, the criteria in *Lund* "must be strictly and rigidly adhered to." *Asbridge v. N.D. State Highway Comm'r,* 291 N.W.2d 739, 750 (N.D.1980).

"Allowing a person charged with driving or being in actual physical control of a motor vehicle while under the influence to vacillate between not taking and taking a chemical test already imposes a severe and somewhat unwarranted burden upon law enforcement officers. We are unwilling to add to this administrative burden by extending and expanding the requirements so precisely articulated in *Lund.*"

*Asbridge,* at 750 (internal citation omitted); *see also Houn v. N.D. Dep't of Transp.,* 2000 ND 131, ¶ 18, 613 N.W.2d 29 (driver failed in an attempt to cure a prior refusal with only twenty minutes left of the two-hour testing window).

[¶ 15] Grosgebauer argues his statement of "I did not refuse" was sufficient to signify he had "change[d] his mind and request[ed] a chemical blood test." *Lund,* at 557. The Department found that though there was sufficient time to perform a blood test "Grosgebauer gave no indication that he was then willing to take the blood test, either verbally or non-ver-

bally." In *Lund*, the driver changed his mind after speaking to an insurance agent and clearly expressed his desire to law enforcement to take a chemical test. Here, Grosgebauer, who earlier had claimed he did not understand the Miranda warning, swore and mumbled when asked to submit to testing. Then, after he overheard a conversation between the officer and a jailer, responded with an ambiguous statement. This is not a clearly articulated reconsideration like that expressed by the driver in *Lund*. Therefore, a preponderance of the evidence supports the Department's determination that Grosgebauer did not cure his refusal to submit to testing.

### III

[¶ 16] We conclude the Department's findings that Grosgebauer refused a blood test and that he did not effectively cure the refusal are supported by a preponderance of the evidence. We affirm the district court's judgment affirming the Department's decision revoking Grosgebauer's driving privileges for three years.

[¶ 17] GERALD W. VANDE WALLE, C.J., and BRUCE E. BOHLMAN, S.J., and MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.

[¶ 18] The Honorable BRUCE E. BOHLMAN, S.J., sitting in place of SANDSTROM, J., disqualified.