2009 ND 191

**Jacob Daniel MAISEY, Petitioner
and Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Respondent
and Appellee.**

**No. 20090194.**

Supreme Court of North Dakota.

Nov. 17, 2009.

Dan L. Herbel, Bismarck, ND, for petitioner and appellant.

Andrew Moraghan, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for respondent and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Jacob Daniel Maisey appealed from the district court's judgment affirming the decision to revoke his driver's license for one year. Maisey argues the Report and Notice form did not show the deputy had reasonable grounds to arrest him for driving under the influence of alcohol, he did not refuse to submit to a blood test, and he cured any alleged refusal. We affirm because the Report and Notice form showed the deputy had probable cause to arrest Maisey for driving under the influence of alcohol, the deputy reasonably interpreted Maisey's words and actions to constitute a refusal to submit to a blood test, and Maisey did not cure his refusal.

## I.

[¶ 2] In the early morning hours of March 3, 2009, a Three Affiliated Tribes officer saw a pickup drive through a stop sign at a high rate of speed. The tribal officer pulled the pickup over and spoke with the driver, Maisey. The tribal officer concluded that Maisey was not a member of the tribe, so he asked the dispatcher to contact the county sheriff's department.

[¶ 3] A deputy testified that he arrived ten to fifteen minutes later. Maisey told the deputy he had been drinking. The deputy observed the odor of an alcoholic beverage coming from the vehicle. Maisey failed the field sobriety tests. The deputy then arrested Maisey for driving under the influence of alcohol.

[¶ 4] The deputy asked if Maisey was willing to submit to a blood test and Maisey agreed, but the deputy testified Maisey wanted to speak with a specific lawyer first. Once at the hospital, the deputy gave Maisey the implied consent advisory. Maisey then called his wife to get the lawyer's telephone number. Apparently, Maisey's wife was unable to give Maisey the telephone number. After the call, the chief of police, who was also present, looked up the lawyer's home telephone number and gave it to Maisey. Maisey did not ask for and was not offered a telephone book. Maisey called the lawyer and left a message on the lawyer's answering machine. The deputy then asked Maisey if he would submit to the blood test, but Maisey said he would like to speak with his lawyer first. The deputy told Maisey he had been given an opportunity to contact his lawyer, and the two engaged in a con-

versation for ten minutes. Maisey continued to state he was willing to submit to the blood test, but wanted to speak with a lawyer first. The deputy told Maisey that if he wanted to submit to the blood test he should stand up and walk into the exam room. Maisey did not go into the exam room. The deputy determined Maisey had refused to submit to the blood test because he did not get up and walk into the exam room.

[¶ 5] As the deputy was taking Maisey out of the hospital, Maisey stated that he wanted to take the blood test, but still wanted to speak to his lawyer first. Maisey grabbed the doorframe and told the deputy again that he was not refusing to take the blood test. The deputy told Maisey it was too late. Maisey began to struggle with the deputy. Maisey, the deputy, and two other officers struggled from the hospital to the deputy's vehicle. The deputy testified, "[H]e tried to pull away from us and either escape ... I don't know where his intentions were of going." During the struggle, Maisey stated that he was not refusing to submit to the blood test. The deputy testified he did not take Maisey back into the hospital to conduct the blood draw "because of the fact that he struggled with us and tried to fight and escape from us." After they arrived at the sheriff's department, Maisey made further comments that he had not refused the blood draw.

[¶ 6] At the beginning of the administrative hearing, Maisey moved to dismiss the proceeding to revoke his license, arguing the Report and Notice did not sufficiently state the deputy's basis for probable cause to believe Maisey was driving under the influence of alcohol, thus, the Department did not have jurisdiction to suspend Maisey's license. At the bottom of the Report and Notice Form, in the "Reasonable suspicion to stop or reason lawfully detained" section, the deputy had checked the box indicating "already stopped," and had written, "Stopped by TAT officer Mark Nolan." In the "Probable cause to arrest/lawfully detain" section at the bottom of the form, the deputy had checked the boxes indicating "odor of alcoholic beverage," "poor balance," and "failed field sobriety test(s)," without providing a more detailed written explanation.

[¶ 7] The hearing officer concluded the deputy had reasonable grounds to believe Maisey had been driving or was in actual control of a vehicle while under the influence of alcohol; the deputy's statement of probable cause on the Report and Notice form was sufficient for the Department to have authority to revoke Maisey's driving privileges; Maisey refused to submit to the blood test after being afforded a reasonable opportunity to consult with a lawyer; and Maisey did not sufficiently cure his refusal because he continued to request that he speak with his lawyer before taking the test and he did not offer to take the test while resisting the officers. The hearing officer revoked Maisey's driver's license for one year.

[¶ 8] Maisey appealed the hearing officer's decision to the district court. The district court held that the Report and Notice, with the boxes checked indicating odor of alcoholic beverage, poor balance, and failed field sobriety tests, showed probable cause to believe that Maisey was driving under the influence of alcohol. The district court concluded that Maisey had been afforded a reasonable opportunity to consult with a lawyer because he was allowed to call his wife, obtain the lawyer's telephone number, and call the lawyer. The district court also concluded that Maisey had refused to take the blood test because his condition that he speak with his lawyer before submitting to the blood test, could not be met. Finally, the dis-

trict court held that Maisey did not cure his refusal because he continued to condition his consent on speaking with his lawyer, and he struggled with the officers.

## II.

[¶ 9] This Court's review of the administrative suspension or revocation of a driver's license is governed by the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Whitecalfe v. N.D. Dep't of Transp.*, 2007 ND 32, ¶ 7, 727 N.W.2d 779 (citing *Aamodt v. N.D. Dep't of Transp.*, 2004 ND 134, ¶ 12, 682 N.W.2d 308). This Court reviews the record created by the administrative agency, and must affirm the agency's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of [N.D.C.C. ch. 28–32] have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

*Id.* (citing N.D.C.C. § 28–32–46). This Court gives deference to the administrative agency's findings of fact and does not substitute its judgment for that of the agency. *Lies v. Dir., N.D. Dep't of Transp.*, 2008 ND 30, ¶ 9, 744 N.W.2d 783 (citing *Wetzel v. N.D. Dep't of Transp.*, 2001 ND 35, ¶ 9, 622 N.W.2d 180). This Court instead determines "only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence from the entire record." *Aamodt*, at ¶ 12 (citing *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161; *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979)). "If sound, the district court's analysis is entitled to respect." *Id.* at ¶ 12 (citing *Dettler v. Sprynczynatyk*, 2004 ND 54, ¶ 10, 676 N.W.2d 799). Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* (citing *Dettler*, at ¶ 10); *Lies*, at ¶ 9 (citing *Wetzel*, at ¶ 10).

## III.

[¶ 10] Maisey argues that the Report and Notice form does not sufficiently show probable cause to believe that he was driving under the influence of alcohol.

[¶ 11] N.D.C.C. § 39–20–04 describes the procedure that must be followed to revoke a driver's license after a driver refuses to submit to chemical testing. The statute requires that an officer submit a certified written report to the Department

showing that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01 ... and in conjunction with the violation ... the officer has, through the officer's observations, formulated an opinion that the person's body contains alcohol, that the person was lawfully arrested if applicable, and that the person had refused to submit to

the test or tests under section 39–20–01 or 39–20–14.

N.D.C.C. § 39–20–04(1). If the statute's basic and mandatory provisions are not met, the Department lacks the authority to revoke a person's driver's license. *Whitecalfe*, 2007 ND 32, ¶ 8, 727 N.W.2d 779 (citing *Aamodt*, 2004 ND 134, ¶ 15, 682 N.W.2d 308). Interpretation of a statute is a question of law. *Id.* (citing *Jorgensen v. N.D. Dep't of Transp.*, 2005 ND 80, ¶ 7, 695 N.W.2d 212).

[¶ 12] In *Aamodt*, this Court discussed N.D.C.C. § 39–20–03.1(3), which uses language similar to § 39–20–04(1). *Aamodt*, 2004 ND 134, ¶ 14, 682 N.W.2d 308. The officer in *Aamodt* merely checked the boxes indicating "already stopped" and "odor of alcoholic beverage" on the bottom of the Report and Notice form, without providing any further written explanation. *Id.* at ¶ 10. The Department conceded that checking the two boxes was not sufficient to show probable cause. *Id.* at ¶ 15. Probable cause to arrest a driver for driving under the influence of alcohol exists when the officer observes some signs of physical or mental impairment and has reason to believe the impairment is caused by alcohol. *City of Fargo v. Egeberg*, 2000 ND 159, ¶ 8, 615 N.W.2d 542 (citing *Seela v. Moore*, 1999 ND 243, ¶ 6, 603 N.W.2d 480; *Presteng v. Dir., N.D. Dep't of Transp.*, 1998 ND 114, ¶ 7, 579 N.W.2d 212).

[¶ 13] In this case, the deputy checked the boxes indicating "already stopped," "odor of alcoholic beverage," "poor balance," and "failed field sobriety test(s)." The boxes indicating "poor balance" and "failed field sobriety test(s)" show that the deputy observed that Maisey was physically or mentally impaired. The box indicating "odor of alcoholic beverage" shows the deputy had reason to believe the impairment was caused by alcohol. Maisey

reads *Aamodt* to mean an officer must always provide a more detailed written statement of the facts supporting probable cause to believe the driver was driving under the influence of alcohol. This requirement is not found in N.D.C.C. §§ 39–20–03.1(3), 39–20–04(1), or in *Aamodt*. The hearing officer's determination that the Report and Notice showed probable cause to believe Maisey was driving under the influence of alcohol was in accordance with the law.

## IV.

[¶ 14] Maisey argues the Department cannot revoke his driver's license because he was not afforded a reasonable opportunity to consult with an attorney before submitting to the blood draw. This Court has previously stated:

> The failure to allow a DUI arrestee a reasonable opportunity to consult with a lawyer after the arrestee has made such a request prevents the revocation of his driver's license for refusal to take a chemical test. There are no bright line rules for determining whether a "reasonable opportunity" to consult with an attorney has been afforded; rather, the determination of whether a reasonable opportunity has been provided turns on an objective review of the totality of the circumstances.

*Lies*, 2008 ND 30, ¶ 10, 744 N.W.2d 783 (citations omitted). The question of whether a person has been afforded a reasonable opportunity to speak with a lawyer is a mixed question of law and fact. *Id.* at ¶ 9 (citing *Wetzel*, 2001 ND 35, ¶ 10, 622 N.W.2d 180). This Court determines whether a person has been afforded a reasonable opportunity to speak with a lawyer by conducting an objective review of the totality of the circumstances. *Id.* at ¶ 10 (citing *State v. Pace*, 2006 ND 98, ¶¶ 6–7, 713 N.W.2d 535).

[¶ 15] Maisey expressed a desire to speak with a specific attorney. When Maisey and the deputy arrived at the hospital, Maisey was allowed to call his wife to obtain the lawyer's telephone number. When Maisey was apparently unable to obtain the telephone number from his wife, the chief of police gave Maisey the lawyer's telephone number. Maisey called the lawyer and left a message, which was not returned. Maisey was not offered a telephone book, but this Court has previously rejected the argument that a person must be provided a telephone book when the person asks to speak to a lawyer. *Lies,* 2008 ND 30, ¶ 11, 744 N.W.2d 783 (citing *Pace,* 2006 ND 98, ¶ 6, 713 N.W.2d 535).

[¶ 16] Maisey asserts that this case is similar to *Baillie v. Moore,* 522 N.W.2d 748 (N.D.1994). In *Baillie,* the driver repeatedly told the officer that he would not submit to a chemical test without consulting an attorney. *Baillie,* 522 N.W.2d at 749. The officer considered that statement to be a refusal to submit to the test. *Id.* The driver was not allowed to consult an attorney. *Id.* This Court held the driver's license could not be revoked because his statutory right to consult with an attorney prior to submitting to a chemical test was violated. *Id.* at 750–51.

[¶ 17] But, this case is more similar to *State v. Pace,* 2006 ND 98, 713 N.W.2d 535, and *Lies v. Dir., N.D. Dep't of Transp.,* 2008 ND 30, 744 N.W.2d 783, than to *Baillie.* In *Pace* and *Lies,* the driver asked to call "his attorney" rather than "an attorney." *Lies,* at ¶ 12 (citing *Pace,* at ¶¶ 2–3). Neither Lies nor Pace asked to speak to other lawyers or suggested other ways to contact their preferred lawyers. *Lies* at ¶ 12 (citing *Pace,* at ¶¶ 2–3). This Court determined in those cases that Lies and Pace were af-

forded reasonable opportunities to consult their lawyers. *Id.* at ¶ 13; *Pace,* at ¶ 9.

[¶ 18] In *Baillie,* the driver was not given any opportunity to contact a lawyer. *Baillie,* 522 N.W.2d at 749. Here, as in *Lies* and *Pace,* Maisey was allowed to call his lawyer of choice. *Lies,* 2008 ND 30, ¶ 3, 744 N.W.2d 783; *Pace,* 2006 ND 98, ¶ 3, 713 N.W.2d 535. He was allowed to leave a message for the lawyer at the number given to him by the chief of police. Considering the totality of the circumstances, Maisey was afforded a reasonable opportunity to consult with a lawyer. The hearing officer's conclusion was in accordance with the law.

## V.

[¶ 19] Maisey argues that he did not refuse to submit to the blood test. Consent to submit to chemical testing is implied by N.D.C.C. § 39–20–01:

> Any person who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcohol, other drug, or combination thereof, content of the blood.... The test or tests must be administered at the direction of a law enforcement officer only after placing the person ... under arrest and informing that person that the person is or will be charged with the offense of driving or being in actual physical control of a vehicle upon the public highways while under the influence of intoxicating liquor, drugs, or a combination thereof.... The law enforcement officer shall also inform the person charged that refusal of the person to submit to the test determined appropriate will result in a revocation

for up to four years of the person's driving privileges.

If the officer complies with the statutory requirements, a person's consent to chemical testing is implied and the person can only withdraw consent by affirmatively refusing to submit to testing. *State v. Johnson*, 2009 ND 167, ¶ 7, 772 N.W.2d 591 (citing *State v. Salter*, 2008 ND 230, ¶ 7, 758 N.W.2d 702). If the person refuses to submit to the chemical test, the test may not be given. N.D.C.C. § 39–20–04. Whether a person refused to submit to a chemical test is a question of fact. *Johnson*, at ¶ 8 (citing *Grosgebauer v. N.D. Dep't of Transp.*, 2008 ND 75, ¶ 7, 747 N.W.2d 510). An affirmative refusal is required to withdraw implied consent. *Id.* (citing *Salter*, at ¶ 7).

[¶ 20] This Court has described the opportunity to refuse a chemical test under N.D.C.C. § 39–20–04 as "legislative grace." *Johnson*, at ¶ 10 (citing *Grosgebauer*, 2008 ND 75, ¶ 11, 747 N.W.2d 510). However, a driver is not permitted "to avoid the potential consequences of test submission and to avoid the penalties of refusal by remaining ambivalent." *Id.* at ¶ 10 (quoting *Grosgebauer*, at ¶ 11). When a driver creates ambiguity regarding whether he or she will submit to chemical testing, the driver cannot complain about any reasonable interpretation of the driver's words and actions by the officer. *See id.* at ¶ 10 ("If a person ambiguously responds to a request to submit to a chemical test, the person suffers the consequences of that ambiguity").

[¶ 21] Here it was reasonable for the deputy to interpret Maisey's words and actions to be a refusal to submit to the blood test. Maisey ambiguously responded to the deputy's request to take the blood test, stating that he would submit to the test, but only after speaking with his lawyer. Maisey was afforded a reasonable

opportunity to speak with a lawyer. After he was unable to speak with his desired lawyer, he would not unconditionally submit to the blood test. However, he continued to state that he was not refusing to submit to the test. Maisey did not give the deputy a clear statement of his intentions. Based on Maisey's statements, it was reasonable for the deputy to determine that Maisey was not going to submit to the blood test.

[¶ 22] In addition, Maisey physically failed to cooperate with the deputy. A physical failure to cooperate can indicate refusal to submit to a chemical test. *Grosgebauer*, 2008 ND 75, ¶ 9, 747 N.W.2d 510 (citing *Mayo v. Moore*, 527 N.W.2d 257, 260 (N.D.1995)). In *Mayo*, the driver physically turned away from the officer when asked to take the test. *Grosgebauer*, at ¶ 10 (citing *Mayo*, 527 N.W.2d at 259). This Court upheld the hearing officer's conclusion that the driver had refused to submit to the test. *Id.* (citing *Mayo*, 527 N.W.2d at 262). Similarly in this case, Maisey did not get up and go into the exam room when asked to do so by the deputy. The hearing officer concluded that this constituted a refusal. This Court does not substitute its own findings for those of the agency. *Lies*, 2008 ND 30, ¶ 9, 744 N.W.2d 783 (citing *Wetzel*, 2001 ND 35, ¶ 9, 622 N.W.2d 180). Considering Maisey's words and actions, a reasoning mind could reasonably conclude Maisey refused to submit to the blood test. *Aamodt*, 2004 ND 134, ¶ 12, 682 N.W.2d 308 (citing *Sonsthagen*, 2003 ND 90, ¶ 7, 663 N.W.2d 161; *Power Fuels*, 283 N.W.2d at 220).

[¶ 23] The facts of this case are similar to the recently decided *State v. Johnson*, 2009 ND 167, 772 N.W.2d 591. In that case, the driver stated that he was not refusing to submit to the blood test, but wanted to have his lawyer there with him.

*Johnson*, 2009 ND 167, ¶ 2, 772 N.W.2d 591. As the nurse prepared to draw his blood, the driver said quietly, "I did not agree to this." *Id.* at ¶ 3. The officer gave the driver an opportunity to clarify his statement, but the driver remained silent. *Id.* The officer instructed the nurse to proceed with the blood draw. *Id.* Johnson argued at the administrative hearing that he had affirmatively refused to submit to the blood test and it should not have been performed. *Id.* at ¶ 4. The hearing officer determined that Johnson did not refuse to submit to the blood test, and this Court upheld that decision. *Id.* at ¶¶ 4, 10. In this case, although the facts are similar, the deputy and the hearing officer concluded Maisey refused to submit to the blood test. There are distinguishing facts between this case and *Johnson.* Maisey physically failed to cooperate with the test when he did not get up and go into the exam room. Maisey also repeatedly stated his condition, that he speak with his lawyer prior to submitting to the blood test. In *Johnson*, the driver did not physically fail to cooperate, and he remained silent when given the chance to clarify his statements. *Id.* at ¶ 3. In *Johnson*, a reasoning mind could reasonably conclude the driver did not refuse to submit to the blood test. Whereas here, a reasoning mind could reasonably conclude Maisey refused to submit to the blood test.

## VI.

[¶ 24] Maisey also argues that he cured any alleged refusal to submit to the blood test. A driver who changes his mind and requests a chemical test can cure a prior refusal. *Grosgebauer*, 2008 ND 75, ¶ 13, 747 N.W.2d 510 (citing *Lund v. Hjelle*, 224 N.W.2d 552, 557 (N.D.1974)). This Court has stated:

[W]e hold that where, as here, one who is arrested for driving while under the influence of intoxicating liquor first re-fuses to submit to a chemical test to determine the alcoholic content of his blood and *later changes his mind and requests a chemical blood test,* the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

*Grosgebauer*, at ¶ 13 (quoting *Lund*, 224 N.W.2d at 557) (alteration and emphasis in original). These criteria "must be strictly and rigidly adhered to." *Id.* at ¶ 14 (quoting *Asbridge v. N.D. State Highway Comm'r*, 291 N.W.2d 739, 750 (N.D.1980)).

[¶ 25] In *Lund*, the driver refused to submit to a blood test at a hospital. *Lund*, 224 N.W.2d at 554. Later at the police station, he changed his mind and requested to take the test after speaking with his insurance agent. *Id.* at 554. The officer did not allow him to take the test. *Id.* at 554–55. This Court held that the driver had cured his prior refusal. *Id.* at 557. In *Grosgebauer*, the driver refused to submit to a blood test. *Grosgebauer*, 2008 ND 75, ¶ 3, 747 N.W.2d 510. After arriving at the jail, he stated, "I did not refuse." *Id.* at ¶ 4. This Court determined that this statement did not cure his prior refusal because it was not a "clearly articulated reconsideration like that expressed by the driver in *Lund.*" *Id.* at ¶ 15.

[¶ 26] Here, after the deputy determined that Maisey had refused the test, Maisey requested to take the test. How-

ever, he persisted with his condition that he speak with his lawyer first. This was not a clearly articulated reconsideration. After refusing to submit to the blood test, Maisey never clearly stated that he was now willing to take the test. A reasoning mind could reasonably conclude Maisey did not cure his refusal.

### VII.

[¶ 27] We affirm the district court's judgment affirming the revocation of Maisey's driver's license for one year.

[¶ 28] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.