2010 ND 15

**CITY OF BISMARCK, Plaintiff
and Appellee**

v.

**Launi Mae BULLINGER, Defendant
and Appellant.**

No. 20090308.

Supreme Court of North Dakota.

Jan. 26, 2010.

Paul H. Fraase, City Prosecutor, Bismarck, ND, for plaintiff and appellee. Submitted on brief.

Danny L. Herbel, Bismarck, ND, for defendant and appellant. Submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] Launi Bullinger appealed after entering a conditional plea of guilty to the

charge of driving under the influence of intoxicating liquor. We affirm the district court's denial of Bullinger's motion to suppress the results of her blood test because she did not clearly and unequivocally refuse to submit to the blood test.

## I.

[¶ 2] On December 13, 2008, Bullinger was cited for driving under the influence of intoxicating liquor. She moved to suppress the results of her blood test. Officer Mike Bolme of the Bismarck Law Enforcement Center testified at the evidentiary hearing that he observed Bullinger's vehicle at 12:12 a.m. backing away from a stoplight it had struck. After stopping the vehicle and after Bullinger performed field sobriety tests, Officer Bolme arrested Bullinger at 12:28 a.m. for driving under the influence. Officer Bolme took Bullinger to the Bismarck Law Enforcement Center for a breath test.

[¶ 3] Officer Bolme testified he gave Bullinger the implied consent warning. Officer Noah Lindelow of the Bismarck Law Enforcement Center testified he attempted to conduct a breath test at 1:02 a.m. The test was invalid because Bullinger provided an insufficient breath sample. Officer Lindelow began to conduct a second breath test at 1:28 a.m. The second test was also invalid because Bullinger provided an insufficient breath sample. Officer Lindelow determined there was approximately one-half hour left in the two hour time period to obtain a chemical test. See N.D.C.C. § 39–08–01(1)(a) (requiring a chemical test to be performed within two hours of driving). Officer Bolme decided to take Bullinger to a hospital to perform a blood test because Bullinger had given inadequate breath samples for two breath tests.

[¶ 4] Bullinger testified at the evidentiary hearing that, while still in the intoxi- lyzer room, she informed Officer Lindelow that she worked at St. Alexius Medical Center in Bismarck. She testified that information was "repeatedly" relayed to Officer Bolme. Officer Bolme testified Bullinger told him she worked at St. Alexius after they arrived at the hospital. Bullinger testified that, after Officer Bolme told her he was taking her to St. Alexius for a blood draw, "I asked him if there was any way possible we could go to Medcenter instead because I was employed [at St. Alexius] and I would rather not go there." She stated, "It was a repeated conversation of I do not want to go to St. [Alexius] for the blood draw, I want to go to Medcenter, and I was not given a reason why." Bullinger testified she told Officer Bolme she would provide a blood sample at Medcenter One, but would not provide one at St. Alexius. According to Bullinger, Officer Bolme then told her, "This is the next step because you weren't cooperating at the police station. So the next step is to get a blood test and we're doing that at St. Alexius." Bullinger believed, "I had no other choice but to submit to a blood test at St. Alexius Hospital because that is what he told me." Bullinger later testified, "I don't feel as though it was very well conveyed in the conversation that I had with Officer Bolme that I would not submit to a blood sample at St. Alexius Hospital." Officer Bolme gave Bullinger the implied consent warning a second time, prior to the blood test. Officer Bolme testified that Bullinger consented to the blood test at St. Alexius. Officer Bolme and a nurse conducted the blood draw. The record does not reveal the results of the blood test, or the reasons why Officer Bolme would not take Bullinger to Medcenter One for the blood test.

[¶ 5] At the end of the hearing, the district court denied Bullinger's motion, stating:

And when the evidence was that she was advised of the implied consent law, all she had to say is I am not giving a blood test, period, and it would have been over. She would have lost her license for a significant period of time, but all she had to do is to say I'm not doing the blood test and she still would have been in court on the physical evidence of driving under the influence as opposed to the chemical test. So I see nothing here.

The fact that she was compelled, the fact that she felt compelled, the fact that she wanted to go to another hospital is irrelevant, she doesn't get to choose that. So the motion to suppress the evidence is denied.

Bullinger subsequently entered a conditional guilty plea, reserving her right to appeal the district court's denial of her motion to suppress the results of the blood test.

## II.

■ [¶ 6] Bullinger argues she affirmatively refused to submit to the blood test when she informed Officer Bolme she would not provide a blood sample at St. Alexius, but would at Medcenter One. The City argues Bullinger did not withdraw her implied consent, and she need not agree to the location where the blood sample was to be taken.

■ [¶ 7] This Court's standard when reviewing a district court's decision on a motion to suppress is well-established:

[T]his Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance. This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary

to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Johnson*, 2009 ND 167, ¶ 6, 772 N.W.2d 591 (citing *State v. Salter*, 2008 ND 230, ¶ 5, 758 N.W.2d 702; *City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994)).

■ [¶ 8] Section 39-20-01, N.D.C.C., implies a driver's consent to chemical testing:

Any person who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcohol ... content of the blood.... The test or tests must be administered at the direction of a law enforcement officer only after placing the person ... under arrest and informing that person that the person is or will be charged with the offense of driving ... upon the public highways while under the influence of intoxicating liquor.... The law enforcement officer shall also inform the person charged that refusal of the person to submit to the test determined appropriate will result in a revocation for up to four years of the person's driving privileges. The law enforcement officer shall determine which of the tests is to be used.

If the officer complies with the statute, the driver's consent can only be withdrawn by affirmatively refusing to submit to testing. *Maisey v. N.D. Dep't of Transp.*, 2009 ND 191, ¶ 19, 775 N.W.2d 200 (citing *Johnson*, 2009 ND 167, ¶ 7, 772 N.W.2d 591). A chemical test cannot be given if the driver

affirmatively refuses. *Id.* (citing N.D.C.C. § 39–20–04). "Whether a person refused to submit to a chemical test is a question of fact." *Id.* (citing *Johnson,* at ¶ 8).

[¶ 9] We have recently discussed drivers' ambiguous responses to officers' requests to submit to chemical testing. In *Johnson,* the driver was given the opportunity to speak to his attorney, but was unable to contact him. *Johnson,* 2009 ND 167, ¶ 2, 772 N.W.2d 591. The driver told the officer he was not refusing to submit to the blood test, but wanted his attorney there with him. *Id.* We stated, "If a person ambiguously responds to a request to submit to a chemical test, the person suffers the consequences of that ambiguity. An affirmative refusal to submit to a chemical test must be clear and unequivocal." *Id.* at ¶ 10. We affirmed the district court's denial of the driver's motion to suppress. *Id.* In *Maisey,* the driver said he would submit to a blood test, but wanted to speak to a lawyer first. *Maisey,* 2009 ND 191, ¶ 4, 775 N.W.2d 200. After the driver left a message for his lawyer, the officer asked him to get up and go into another room if he wanted to submit to a blood test. *Id.* After the driver failed to get up and go into another room to submit to the test, the officer determined the driver had refused the test. *Id.* We cited *Johnson,* and explained, "When a driver creates ambiguity regarding whether he or she will submit to chemical testing, the driver cannot complain about any reasonable interpretation of the driver's words and actions by the officer." *Id.* at ¶ 20 (citing *Johnson,* at ¶ 10). We affirmed the revocation of the driver's license. *Id.* at ¶ 27.

[¶ 10] Here, Bullinger asserted she told Officer Bolme she would submit to a blood test at Medcenter One, but not at St. Alexius. However, Bullinger also testified, "I don't feel as though it was very well conveyed in the conversation that I had with Officer Bolme that I would not submit to a blood sample at St. Alexius Hospital." Officer Bolme concluded Bullinger had consented to the blood test, and Bullinger's consent was implied by statute. This Court has stated an affirmative refusal to submit to chemical testing must be "clear and unequivocal." *Johnson,* 2009 ND 167, ¶ 10, 772 N.W.2d 591. We have also stated, "When a driver creates ambiguity regarding whether he or she will submit to chemical testing, the driver cannot complain about any reasonable interpretation of the driver's words and actions by the officer." *Maisey,* 2009 ND 191, ¶ 20, 775 N.W.2d 200. Bullinger did not clearly and unequivocally refuse to submit to the blood test. She responded with a condition, that she would submit to a blood test only at Medcenter One. A conditional response to a request to submit to chemical testing can be interpreted either as consent or refusal, depending on the circumstances. The driver must suffer the consequences of an officer's reasonable interpretation of the driver's conditional response. Here, Bullinger's conditional response was not sufficient to revoke her implied consent to chemical testing.

[¶ 11] In addition, the implied consent statute does not allow a person to choose where a chemical test will be conducted. The statute states, in part, "The test or tests must be administered at the direction of a law enforcement officer." N.D.C.C. § 39–20–01. The statute also places the choice of which test to use, breath or blood, in the officer's hands. *Id.* The only choice the driver is given is whether to submit to the test, or to refuse to submit and have his or her driver's license revoked. Section 39–20–04, N.D.C.C., allows a person to refuse to submit to a chemical test, but it does not follow that the person is allowed to submit

or refuse to the particular circumstances of the test, such as where the test will be conducted. Here, the chemical test was conducted at the direction of Officer Bolme. He chose what type of test to use, and where the test would be conducted.

[¶ 12] The district court correctly stated Bullinger could have affirmatively refused to submit to the test, but did not. The district court also correctly held Bullinger had no right to choose where the blood test would be conducted. The record shows Bullinger was given the implied consent warning and did not withdraw her implied consent. Sufficient competent evidence was presented fairly capable of supporting the district court's findings, and the district court's decision is not contrary to the manifest weight of the evidence. *Johnson*, 2009 ND 167, ¶ 6, 772 N.W.2d 591 (citing *Salter*, 2008 ND 230, ¶ 5, 758 N.W.2d 702; *Thompson*, 520 N.W.2d at 581).

### III.

[¶ 13] We affirm the district court's denial of Bullinger's motion to suppress the results of her blood test and the judgment of conviction.

[¶ 14] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.