Victor KREHLIK, Appellant,

v.

Marshall MOORE, Director, North Dakota Department of Transportation, Appellee.

Civil No. 950279.

Supreme Court of North Dakota.

Jan. 30, 1996.

Thomas K. Schoppert, Schoppert Law Firm, Minot, for appellant.

Monte L. Rogneby, Assistant Attorney General, Bismarck, for appellee.

VANDE WALLE, Chief Justice.

Victor Krehlik appealed from a judgment entered by the district court affirming the North Dakota Department of Transportation's administrative decision to revoke Krehlik's driver's license for a period of one year for refusing to submit to chemical testing to determine his alcohol content. Because a person refusing a test for intoxication may cure the refusal within a reasonable time after the refusal, we reverse and remand for further proceedings.

On April 26, 1995, at approximately 10:47 p.m., Trooper Kelly Rodgers arrested Krehlik for driving under the influence. Following the arrest, Trooper Rodgers advised Krehlik of the implied consent law and requested that Krehlik submit to a blood test to determine his alcohol content. Krehlik responded that he wanted to speak to an attorney. Trooper Rodgers took Krehlik to UniMed Hospital in Minot, North Dakota. When they arrived at the hospital, at approximately 10:57 p.m., Trooper Rodgers gave Krehlik the opportunity to contact an attorney by providing Krehlik with a telephone and phone book. With Trooper Rodgers' assistance, Krehlik attempted to reach an attorney by calling his office and home, but there was no answer at either number. Trooper Rodgers suggested to Krehlik that he seek advice from a different attorney, but Krehlik indicated that he would not take the chemical test until he spoke with the attorney.

Trooper Rodgers again explained to Krehlik the implied consent law and informed him that if he did not contact another attorney or submit to the blood test, it would be marked as a refusal. Krehlik again responded that he would not take the blood test until he spoke with the attorney he had called. Trooper Rodgers transported Krehlik to the Ward County Jail.

During booking procedure, a jailer called the attorney at his home and left a message on his answering machine. Krehlik continued to state that he would not take the test without speaking to the attorney. At 11:22 p.m., Trooper Rodgers completed the Report and Notice Form and issued a temporary operator's permit to Krehlik pursuant to chapter 39-20, NDCC. As he left the jail to continue his patrol, Trooper Rodgers mailed the Report and Notice Form to the Department of Transportation.

After speaking with jail personnel, Krehlik decided to contact a son of the attorney that Krehlik had originally chosen. By recommendation, Krehlik contacted Tom Schoppert who advised Krehlik to take the blood test. While on patrol, Trooper Rodgers was notified by radio that Krehlik wanted to take the test. Trooper Rodgers returned to the jail to transport Krehlik to a hospital to take the blood test. While at the jail, Trooper Rodgers and Krehlik discussed payment for the test and where the test would be taken. Deciding on UniMed Hospital, Trooper Rodgers transported Krehlik to the hospital where, after further discussion of whether Krehlik's insurance would cover the cost of the test, blood was drawn from Krehlik at 12:50 a.m., more than two hours after Krehlik had been driving or in physical control of his vehicle.

At the administrative hearing, the hearing officer found that "Trooper Rodgers interpreted [Krehlik's] request as a request for an independent test because the paperwork and Report and Notice for refusal had been served on [Krehlik]." Revoking Krehlik's license for one year, the hearing officer concluded:

> "Trooper Rodgers had reasonable articulable suspicion to stop [Krehlik's] vehicle and had reasonable grounds to believe the petitioner had been driving under the influence. Trooper Rodgers placed the petitioner under arrest. Petitioner refused to submit to the test requested by Trooper Rodgers after having reasonable opportunity to speak to an attorney."

Krehlik appealed the revocation to the district court, which affirmed the administrative decision. On appeal to this Court, Krehlik asserts that he did not request an "independent test"; rather, Krehlik argues that his request for the test "cured" his initial refusal.

 Our review of an administrative revocation of a driver's license is governed by the Administrative Agencies Practice Act. N.D. Cent.Code § 28–32–01(1); *Baillie v. Moore*, 522 N.W.2d 748, 749 (N.D.1994). This court reviews the record of the administrative agency, not the ruling of the district court. *Boyce v. Backes*, 488 N.W.2d 45, 47 (N.D.1992); *North Dakota Dept. of Transp. v. DuPaul*, 487 N.W.2d 593 (N.D.1992). We will affirm the administrative decision unless we conclude that:

"1) the decision is not in accordance with the law; 2) the decision violates the constitutional rights of the appellant; 3) provisions of the Administrative Agencies Practice[ ] Act were not complied with in the proceedings before the agency; 4) the agency's rules or procedures have not afforded the appellant a fair hearing; 5) the agency's findings are not supported by a preponderance of the evidence; or 6) the conclusions of law and the agency's decision are not supported by its findings of fact. NDCC 28–32–19."

*DuPaul*, 487 N.W.2d at 595.

 Krehlik argues that, pursuant to *Lund v. Hjelle*, 224 N.W.2d 552 (N.D.1974), an individual who has refused to submit to chemical testing under chapter 39–20, NDCC, can cure a refusal by subsequently consenting to take the test. In *Lund*, we held:

"[W]here, as here, one who is arrested for driving while under the influence of intoxicating liquor first refuses to submit to a chemical test to determine the alcoholic content of his blood and later changes his mind and requests a chemical blood test, the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest."

*Lund*, 224 N.W.2d at 557. Asserting that the hearing officer and the district court failed to apply *Lund*, Krehlik contends that he requested to take the test within a reasonable time and that his request satisfied *Lund*. The Department challenges *Lund*'s rationale and claims that the Legislature's modifications to the implied consent laws since the *Lund* decision invalidate its continued application.

The Department argues "[u]nlike when *Lund* was decided, …, now, time is of the essence and any delay prejudices the Department's ability to give effect to the Legislature's intent in enacting Chapter 39–20." In support of its argument, the Department cites to section 39–20–04.1, NDCC, which was not in place at the time *Lund* was decided. Section 39–20–04.1, NDCC, provides that, in order for the Department to administratively sanction a driver for driving or being in physical control of a vehicle while having certain alcohol concentration, the driver must have "an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a test within two hours after driving or being in physical control of a motor vehicle…." N.D. Cent.Code § 39–20–04.1. We disagree with the Department.

In *Lund*, we recognized that the purpose of chapter 39–20, NDCC, was "to eliminate the drunken driver from the highways by requiring drivers suspected of operating motor vehicles while under the influence of intoxicating liquor to submit to a chemical test to determine the alcoholic content of their blood." *Lund*, 224 N.W.2d at 557. Although we realize that the Legislature has modified the implied consent statutes, the purpose of chapter 39–20, NDCC, has not changed since *Lund*. The two-hour limitation in section 39–20–04.1, NDCC, may narrow the reasonable period of time within which the person arrested may change his or her mind, but it does not refute the underlying rationale of *Lund*. We continue to interpret the implied consent laws "consistent[ly] with the legislature's desire for suspects to choose to take

the test." *State v. Murphy,* 516 N.W.2d 285, 287 (N.D.1994).

Since *Lund,* the Legislature has magnified the ramifications for refusing to submit to testing. *See* N.D. Cent.Code § 39–20–04 [period of revocation increased from six months to one year]; *compare* N.D. Cent. Code § 39–20–04 *with* N.D. Cent.Code § 39–20–04.1 [administrative sanction for driving or being in physical control of a vehicle while having "an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of the test within two hours after driving or being in physical control of a motor vehicle" is suspension of license for ninety-one days for a first offense within the five years preceding arrest]. In addition, under the current law, the officer must inform the driver of the consequences of refusal. N.D. Cent.Code § 39–20–01 ["The law enforcement officer shall also inform the person charged that refusal of the person to submit to the test determined appropriate will result in a revocation for up to three years of the person's driving privileges."]. These changes reflect the Legislature's desire for testing. Likewise, we believe that the holding in *Lund,* which permits an individual to subsequently cure a refusal, fosters the Legislature's preference for drivers to take the test.

In another attack on *Lund*'s rationale, the Department argues that the Legislature provided its own remedy for a driver to "cure" an initial refusal. By amending and reenacting section 39–20–04, NDCC, to permit a person who refused to submit to testing to avoid revocation for refusal by following certain criteria, including voluntarily pleading guilty to violating section 39–08–01, NDCC, or equivalent ordinance, the Department contends the Legislature supplanted *Lund*'s holding. *See* House Bill No. 1595, 1989 N.D. Laws Ch. 479. We disagree.

In 1989, when the Legislature was considering House Bill No. 1595 and whether to enact section 39–20–04(2), NDCC, Representative Steve Tomac, a sponsor of the bill, testified before the House Transportation Committee that "[a]s the present DUI law stands, if you refuse to take a blood alcohol test, you automatically lose your drivers' license for one year." House Standing Committee Minutes, 1989, hearing before the Transportation Committee on HB 1595, February 3, 1989 [Standing Committee Minutes]. Representative Tomac's description of the law accurately explained the result which occurred when a driver refused to submit to testing without having cured the refusal. *See, e.g., State v. Clark,* 367 N.W.2d 168, 170 (N.D.1985) [recognizing that "the Legislature is presumed to know the law when enacting legislation ... and so would be chargeable with knowledge of the law established...."]. Representative Tomac testified further that, under House Bill No. 1595, "you can refuse to take a blood alcohol test and not lose your license for one year if you plead guilty to the violation with which you are charged." Standing Committee Minutes. Although the addition of section 39–20–04(2), NDCC, provided a driver with an alternative to revocation under section 39–20–04(1), NDCC, the amendment did not alter our interpretation of when a driver is subject to section 39–20–04, NDCC, i.e., when a driver has refused to submit to testing and has failed to subsequently cure that refusal. To conclude otherwise would abrogate the Legislature's desire for suspects to choose to take the test.

This Court has held that "[t]he construction of a statute by the courts, supported by long acquiescence on the part of the Legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent." *Skinner v. American State Bank,* 189 N.W.2d 665 (N.D.1971) Syllabus by the Court; *see also Johnson v. Johnson,* 527 N.W.2d 663 (N.D. 1995); *Erdle v. Dorgan,* 300 N.W.2d 834, 839 (N.D.1980) [VandeWalle, J., concurring specially stating that "if the interpretation placed upon statutes by this court is incorrect, the Legislature presumably would take action by the amendment of the statutes to correct that interpretation"]. A driver's ability to cure a refusal has been available under our interpretation of the implied consent statutes for more than twenty years. *See North Dakota Dept. of Transp. v. DuPaul,* 487 N.W.2d 593, 597 (N.D.1992) [test after release from police custody did not cure re-

fusal]; *Kuntz v. State Highway Com'r*, 405 N.W.2d 285, 289 (N.D.1987) [majority cites *Lund v. Hjelle*, 224 N.W.2d 552 (N.D.1974) with approval]; *Asbridge v. North Dakota State Highway Com'r*, 291 N.W.2d 739 (N.D. 1980); *Lund v. Hjelle*, 224 N.W.2d 552 (N.D. 1974). We conclude that our holding in *Lund* has been a longstanding principle in our implied consent decisions and remains consistent with legislative intent.

Finally, the Department urges that the factors summarized in *Lund* permit the well-informed driver to "manipulate law enforcement in an effort to achieve a lower alcohol concentration measurement" by initially refusing to take the test and later agreeing to submit to testing at the end of the two-hour period. We disagree. We have explained that the criteria enunciated in *Lund* must be applied "strictly and rigidly." *Asbridge*, 291 N.W.2d at 750. Although the reasonableness of a request depends upon the particular circumstances in each case, a driver is not permitted to "unduly delay and extend the booking, observation, and testing processes." *See, e.g., Boyce v. Backes,* 488 N.W.2d 45, 47 (N.D.1992) [stating that the reasonableness of an opportunity to contact an attorney is not dictated by the maximum amount of time that police may have to administer the most useful test to prove a licensee's intoxication].

Applying *Lund,* Krehlik challenges the determination that Krehlik's request was for an "independent" test. Krehlik argues that the hearing officer and district court were wrong as a matter of law when they failed to apply *Lund* and determined that the request was for an independent test merely because "the paperwork and Report and Notice for refusal had been served on petitioner." We agree. A driver can cure an initial refusal, notwithstanding the fact that the officer issued a temporary operator's permit and mailed the Report and Notice Form to the Department of Transportation by the time of the request. We know of no rule, other than a bureaucratic mindset, that would deny the officer the authority to recall the Report and Notice.

Because the hearing officer did not make a finding as to whether the test could reasonably have been taken before the expiration of the two-hour period, we reverse the Department's decision to revoke Krehlik's driver's license and remand to the Department for further proceedings consistent with this opinion.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.