2000 ND 131

**Robert HOUN, Petitioner
and Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Respondent
and Appellee.**

No. 20000058.

Supreme Court of North Dakota.

June 29, 2000.

Chad R. McCabe, Vinje Law Firm, Bismarck, N.D., for petitioner and appellant.

Todd Adam Sattler, Attorney General's Office, Bismarck, N.D., for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Robert Houn appealed from a judgment affirming a North Dakota Department of Transportation decision revoking his driving privileges for one year. We conclude the Department's finding Houn failed to timely cure his refusal to submit to a blood-alcohol test is supported by a preponderance of the evidence. We affirm.

I

[¶ 2] Bismarck police officer Glen Valley observed Houn driving erratically at 1:10 a.m. on October 10, 1999. Valley stopped Houn and, while speaking with him, detected the odor of alcohol. Valley asked Houn to perform several field sobriety tests, which Houn failed. Valley arrested Houn at about 1:30 a.m. for driving under the influence, and transported him to the Bismarck police station. Valley advised Houn about the implied consent law[1] and his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Valley asked Houn to submit to an Intoxilyzer test to measure his blood-alcohol concentration. Houn indicated he wanted to speak to a specific attorney, but he was unable to contact that attorney. Houn was informed several times about the implied consent law, and he insisted on contacting a specific attorney before submitting to a blood-alcohol test. Houn was unable to contact the attorney, and he stated he would not take a test without legal representation. Finally, Officer Sinclair, a certified Intoxilyzer operator on duty at the police station, left the station and went back on patrol. Valley testified Houn subsequently indicated he would take the test at about 2:50 a.m., but Valley, who was not a certified Intoxilyzer operator, informed Houn it was too late.

[¶ 3] The Department sought to revoke Houn's driving privileges for one year because he refused to take a blood-alcohol test. An administrative hearing officer decided Houn's attempt to cure his prior refusal to take a test was not timely under the requirements of *Lund v. Hjelle*, 224 N.W.2d 552 (N.D.1974). The hearing officer found:

> The implied consent advisory was given to Mr. Houn several times. Mr. Houn wanted to talk with an attorney, was given opportunities to call an attorney, but was not successful in reaching the attorney of his choice. Mr. Houn said that he would not take the test without legal representation. Mr. Houn was offered several opportunities to take an Intoxilyzer test, all of which he refused. Eventually, Mr. Houn was told that the end of the two-hour period within which testing must be completed was approaching and that this would be treated as a refusal. The Intoxilyzer operator left the police department in order to go back on patrol. At 2:50 a.m., Officer

---

1. Under N.D.C.C. § 39–20–01, "[a]ny person who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state is deemed to have given consent, and shall consent, subject to the provisions of this chapter, to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcohol, other drug, or combination thereof, content of the blood." *See also* N.D.C.C. § 39–20–14 (implied consent law for onsite screening tests).

Valley issued a Report & Notice to Mr. Houn. Around the time that the Report & Notice indicating a refusal was handed to Mr. Houn, Mr. Houn stated that he would submit to testing for alcohol concentration. Mr. Houn's statement was probably made two or three minutes before 2:50 a.m. Test results, if obtained before 3:10 a.m., would still have been accurate. Time available for testing was therefore no more than 20 to 23 minutes. That Saturday night (including early Sunday morning) was a very busy night for the Bismarck Police Dept., and no more than 6 or 7 police officers were on duty, of whom only two were qualified operators for the Intoxilyzer. In an ideal situation, Intoxilyzer testing could have been completed in as little as 14 minutes. In this case, the situation was not ideal because an Intoxilyzer operator was not immediately available and an Intoxilyzer machine was not immediately available. Officer Valley, considering all factors at the time that Mr. Houn expressed a willingness to submit to testing, reasonably believed that it was not possible to bring in an operator and complete testing before the end of the two-hour period. Alternatively, blood could have been drawn for testing. In an ideal situation, the blood drawing process at the hospital could be completed in as little as ten minutes. There is no evidence that an ideal situation existed for Mr. Houn that night. It would have taken several minutes, probably 6 to 8 minutes, for Officer Valley to take Mr. Houn to the hospital emergency room. Officer Valley, considering all factors at the time that Mr. Houn expressed a willingness to submit to testing, reasonably believed that it was not possible to have blood drawn for testing before the end of the two-hour period. Trying to obtain a test before 3:10 a.m. would have caused substantial inconvenience to the police. Testing facilities, though theoretically available, were not readily available within the required time frame.

The Department revoked Houn's driving privileges for one year. The district court affirmed the Department's decision, and Houn appealed.

[¶ 4] The Department's hearing was timely under N.D.C.C. § 39–20–05. Houn's appeal to the district court was timely under N.D.C.C. § 39–20–06. The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 28–32–15 and 39–20–06. Houn's appeal from the district court was timely under N.D.C.C. § 28–32–21. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–32–21.

## II

[¶ 5] We review an administrative revocation of a driver's license under N.D.C.C. ch. 28–32, the Administrative Agencies Practice Act. *Krehlik v. Moore*, 542 N.W.2d 443, 445 (N.D.1996). We affirm the Department's decision unless we conclude:

1) the decision is not in accordance with the law; 2) the decision violates the constitutional rights of the appellant; 3) provisions of the Administrative Agencies Practices Act were not complied with in the proceedings before the agency; 4) the agency's rules or procedures have not afforded the appellant a fair hearing; 5) the agency's findings are not supported by a preponderance of the evidence; or 6) the conclusions of law and the agency's decision are not supported by its findings of fact. NDCC 28–32–19.

*North Dakota Dep't of Transp. v. DuPaul*, 487 N.W.2d 593, 595 (N.D.1992).

[¶ 6] We give great deference to the Department's findings of fact, and we do not make independent findings or substitute our judgment for that of the Department; rather, we determine only whether a reasoning mind reasonably could have concluded the Department's findings were supported by the weight of the evidence from the entire record. *Seela*

*v. Moore,* 1999 ND 243, ¶ 5, 603 N.W.2d 480; *Asbridge v. North Dakota State Highway Comm'r,* 291 N.W.2d 739, 744 (N.D.1980). Our standard of review defers to the hearing officer's opportunity to hear the witnesses' testimony and to judge their credibility, and we will not disturb the Department's findings unless they are against the greater weight of the evidence. *Johnson v. North Dakota Dep't. of Transp.,* 530 N.W.2d 359, 361 (N.D.1995). Resolving underlying factual disputes is the exclusive province of the hearing officer. *Id.*

### III

[¶ 7] Houn argues the Department erred in finding he failed to timely cure his refusal to submit to a blood-alcohol test.

### A

[¶ 8] Under North Dakota law, a chemical test to determine a driver's blood-alcohol concentration must be given within two hours of driving, and the refusal to submit to a test will result in the revocation of driving privileges for up to three years. *See* N.D.C.C. §§ 39–20–01, 39–20–04, 39–20–04.1. Drivers who refuse to submit to a chemical test will not have their license revoked if, within 25 days, they plead guilty to violating N.D.C.C. § 39–08–01, or an equivalent ordinance. *See* N.D.C.C. § 39–20–04(2). Acceptable chemical tests include blood, breath, urine, or saliva, and the law enforcement officer has discretion to decide which test to use. *See* N.D.C.C. § 39–20–01.

[¶ 9] An arrestee who refuses to submit to a chemical test may cure that refusal by consenting to a test within a reasonable time after the prior refusal if the subsequent test would still be accurate, testing equipment or facilities are still available, the subject has been in police custody and under observation for the whole time since arrest, and the subsequent test will result in no substantial inconvenience or expense to law enforcement. *Lund,* 224 N.W.2d at 557. The two-hour limitation for taking a blood-alcohol test in N.D.C.C. § 39–20–04.1, narrows the reasonable time within which arrestees may attempt to cure a prior refusal, but does not refute the underlying rationale of *Lund,* which recognizes a preference for a chemical test within a reasonable time.[2] *Krehlik,* 542 N.W.2d at 445. The requirements to cure a prior refusal outlined in *Lund* must be strictly and rigidly followed. *Asbridge,* 291 N.W.2d at 750 (holding subsequent consent did not cure prior refusal because arrestee was not in police custody and under observation from time of arrest until attempted cure).

### B

[¶ 10] Houn argues the hearing officer erred in deciding he attempted to cure his prior refusal at 2:50 a.m., and he actually attempted to cure his refusal earlier, with about 39 minutes to spare. Houn argues it was undisputed he had 39 minutes left in the two-hour period when he attempted to cure his refusal.[3]

**2.** When *Lund* was decided, the Legislature had not yet enacted the two-hour period in N.D.C.C. § 39–20–04.1. *See Krehlik,* 542 N.W.2d at 445.

**3.** Houn has asked this Court to correct the record or take judicial notice of the meaning of a reference to "this" in the transcript of the administrative hearing. He claims "this" refers to when a police videotape began. Houn asked the hearing officer to correct or modify the record under N.D.R.App.P. 10(h), to explain the meaning of "this." The hearing officer declined Houn's request. Chapter 28–32, N.D.C.C., outlines the procedure for sup-

plementing the record in an administrative proceeding. *See* N.D.C.C. § 28–32–18.

Houn now asks this Court to take judicial notice of the meaning of "this." Under N.D.R.Ev. 201(b), a judicially noticed fact must not be subject to reasonable dispute because it is either generally known or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Houn's request involves a dispute about what testimony in the record refers to and is not subject to judicial notice under N.D.R.Ev. 201(b). The record speaks for itself, and inferences from that

[¶ 11] The hearing officer found Houn attempted to cure his refusal at about 2:50 a.m. and the "[t]ime available for testing was therefore no more than 20 to 23 minutes." Officer Valley's testimony supports the hearing officer's finding. Although Houn argues Valley's testimony is internally conflicting, the hearing officer, not this Court, determines the credibility of witnesses and the weight to be given their testimony. *See Johnson*, 530 N.W.2d at 361. Under our deferential standard of review, we conclude a reasoning mind reasonably could have concluded Houn attempted to cure his refusal at 2:50 a.m.

C

[¶ 12] Houn argues even if he attempted to cure his refusal at 2:50 a.m., a blood or breath test could have been done within the two-hour period, which ended at 3:10 a.m. Houn argues the implied consent law reflects the Legislature's desire for suspects to take a chemical test, and he offers several scenarios to demonstrate either a blood or Intoxilyzer test could have been performed before 3:10 a.m. Houn effectively argues law enforcement must honor an attempted cure if there is any possibility a chemical test could be completed within two hours.

[¶ 13] In *Lund*, 224 N.W.2d at 557, this Court held:

[W]here, as here, one who is arrested for driving while under the influence of intoxicating liquor first refuses to submit to a chemical test to determine the alcoholic content of his blood and later changes his mind and requests a chemical blood test, the subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readi-

ly available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

[¶ 14] In *Krehlik*, 542 N.W.2d at 444, an arrestee refused to take a chemical test without speaking to a specific attorney, who was unavailable. The arresting officer completed his report, issued the arrestee a temporary permit, and mailed the report to the Department as he left the jail to continue his patrol. The arrestee subsequently contacted an attorney, who suggested the arrestee take a blood test. The arrestee then informed law enforcement officials he wanted to take the test. The arresting officer was called back from patrol to accompany the arrestee for a blood test. Blood was drawn from the arrestee more than two hours after he had been driving or in physical control of his vehicle.

[¶ 15] We rejected the Department's argument the enactment of a two-hour limitation for a chemical test invalidated the continued application of *Lund*. We said the two-hour limitation for a chemical test in N.D.C.C. § 39–20–04.1 may narrow the reasonable period of time within which arrested persons may change their mind, but the two-hour period does not refute the underlying rationale of *Lund*, which recognizes a legislative preference for a chemical test. *Krehlik*, 542 N.W.2d at 447. We said a driver can cure an initial refusal notwithstanding that the arresting officer issued a temporary operator's permit and mailed a report to the Department by the time of the request. *Id.* We held because the hearing officer did not make a finding the blood test reasonably could have been taken before the expiration of the two-hour period, a remand was necessary for a finding on that issue. *Id.*

record are matters for the hearing officer as the trier of fact and not for this Court under

the auspices of judicial notice.

[¶ 16] Houn argues *Krehlik* is nearly identical to this case. In *Krehlik*, 542 N.W.2d at 447, however, there were not repeated refusals to take a chemical test, and we remanded for further proceedings because the hearing officer did not make a finding about whether a chemical test could reasonably have been taken before the expiration of the two-hour period.

■ [¶ 17] Here, Houn repeatedly told law enforcement officials he would not take a test without legal representation. The hearing officer found that in an "ideal situation" an Intoxilyzer or blood test[4] could have been completed within the two-hour period, but the situation was not ideal and Officer Valley reasonably believed it was not possible to do either test within that time. The hearing officer found "[t]esting facilities, though theoretically available, were not readily available within the required time frame," and "[t]rying to obtain a test [within the time frame] would have caused substantial inconvenience to the police." There is evidence in this record which supports the hearing officer's findings.

■ [¶ 18] Although the Legislature has expressed its desire for suspects to take a chemical test, *Lund, Asbridge,* and *Krehlik* do not require law enforcement officers to honor an attempted cure if the officers reasonably believed it was not possible to do a test within the appropriate time frame, testing facilities were not readily available, and trying to obtain a test would have caused substantial inconvenience or expense to law enforcement. We decline to adopt a requirement that law enforcement must honor an attempted cure if there is a theoretical possibility a chemical test could be concluded within two hours. Under *Lund* and its progeny, the standard is whether the proffered test reasonably could have been taken before the expiration of the two-hour period. Here, the hearing officer found the test could not have reasonably been completed within the two-hour period. Under our deferential standard of review, a reasoning mind reasonably could have found as the hearing officer did.

[¶ 19] We therefore conclude the hearing officer's findings are supported by a preponderance of the evidence, and the hearing officer's conclusions of law and decision are supported by the findings.

### IV

[¶ 20] We affirm the judgment revoking Houn's driving privileges for one year.

[¶ 21] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., concur.

---

4. Although the hearing officer discussed the possibility of taking a blood test and Houn also suggests he could have had a blood test within the required time, Officer Valley asked Houn to submit to an Intoxilyzer test. An arrestee may not cure an initial refusal to submit to a chemical test by asking to take a test different from the one offered by the officer. *See Burley v. North Dakota Dep't of Transp.,* 1999 ND 232, ¶ 8 n. 1, 603 N.W.2d 490; *Clairmont v. Hjelle,* 234 N.W.2d 13, 16 (N.D.1975).