# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

## 2025 ND 84

---

Artur Skobodzinski,                                                    Appellant

   v.

North Dakota Department of Transportation,                            Appellee

---

## No. 20240241

---

Appeal from the District Court of Golden Valley County, Southwest Judicial District, the Honorable Rhonda R. Ehlis, Judge.

REVERSED.

Opinion of the Court by Bahr, Justice, in which Justices Crothers and McEvers joined. Chief Justice Jensen filed an opinion concurring, in which Justice Tufte joined.

Markus A. Powell, Dickinson, ND, for appellant.

Michael T. Pitcher, Assistant Attorney General, Bismarck, ND, for appellee.

# Skobodzinski v. NDDOT
## No. 20240241

**Bahr, Justice.**

[¶1]   Artur Skobodzinski appeals from a district court judgment affirming a Department of Transportation ("Department") hearing officer's decision revoking his driving privileges for 180 days. On appeal, Skobodzinski argues the hearing officer erred in finding he refused a chemical test. He further argues the hearing officer erred in determining he was given a reasonable opportunity to speak with an attorney before taking a chemical test. We conclude the hearing officer did not err in finding Skobodzinski refused a chemical test. We further conclude the hearing officer erred in determining Skobodzinski was given a reasonable opportunity to speak with an attorney before taking a chemical test. We reverse the district court's judgment and hearing officer's decision revoking Skobodzinski's driving privileges.

I

[¶2]   On March 18, 2024, at 9:42 a.m., a North Dakota Highway Patrol trooper was conducting commercial vehicle safety inspections at a commercial weigh station in Beach, North Dakota. Skobodzinski, who was driving a commercial vehicle, pulled into the inspection site. The trooper requested from Skobodzinski the required paperwork and then started the safety checks.

[¶3]   During his interaction with Skobodzinski, the trooper observed an odor of alcohol coming from Skobodzinski and that Skobodzinski's eyes were bloodshot. The trooper asked Skobodzinski about alcohol use; Skobodzinski stated he had not consumed alcohol in weeks. Skobodzinski declined field sobriety tests. The trooper read the implied consent advisory for an on-site screening test and requested Skobodzinski take the test. Skobodzinski stated he would take a blood test. The trooper told Skobodzinski he needed a "yes or no answer" and Skobodzinski said "no." The trooper arrested Skobodzinski for driving under the influence in violation of N.D.C.C. § 39-08-01. The trooper then read to Skobodzinski the implied consent advisory for a chemical breath test and requested he take the test. The trooper determined Skobodzinski refused to take

1

the test and later issued Skobodzinski a temporary operator's permit and a report and notice form. Skobodzinski requested an administrative hearing.

[¶4] The Department held an administrative hearing before a hearing officer in April 2024. The hearing officer made the following findings regarding Skobodzinski's refusal to take a chemical test and request to speak with an attorney:

> Trooper Loeffel read the implied consent advisory for a chemical test. Trooper Loeffel requested a chemical breath test. Mr. Skobodzinski stated he would take a blood test. Mr. Skobodzinski refused the chemical test. Trooper Loeffel informed Mr. Skobodzinski that he could change his mind and if he did, to inform him. Trooper Loeffel then conducted a search of the vehicle and started the safety check. Trooper Loeffel checked in with Mr. Skobodzinski and requested a chemical test again. Mr. Skobodzinski stated 5th amendment. Trooper Loeffel asked if he wanted an independent blood test. Mr. Skobodzinski stated "5th amendment". Trooper Loeffel continued to check in with Mr. Skobodzinski during the safety check. At 10:58am [sic] Mr. Skobodzinski asked to speak with a supervisor and an attorney. Mr. Skobodzinski was allowed to speak with a NDHP supervisor and was told that he would be given an opportunity to speak with an attorney at the jail. At 12:05 p.m. Trooper Loeffel arrived at the law enforcement center and placed Mr. Skobodzinski in an interview room and gave him access to a phone and access to the internet and a phonebook. Mr. Skobodzinski had a reasonable opportunity to contact an attorney. Trooper Loeffel allowed Mr. Skobodzinski time to make phone calls. Mr. Skobodzinski stated he had no further questions. Trooper Loeffel issued the temporary operator's permit to Mr. Skobodzinski. The report and notice form was sent to the NDDOT.

The hearing officer concluded the trooper had reasonable grounds to believe Skobodzinski had been driving a vehicle while under the influence of intoxicating liquor, he was placed under arrest, and he "refused to submit to the test or tests." The hearing officer revoked Skobodzinski's driving privileges for 180 days.

[¶5] Skobodzinski appealed to the district court. The district court affirmed the hearing officer's decision.

II

[¶6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs our review of the Department's decision to suspend or revoke a driver's license. *Hoover v. Dir., N.D. Dep't of Transp.*, 2024 ND 8, ¶ 6, 2 N.W.3d 215. "In reviewing an administrative decision, '[w]e review the Department's original decision, giving deference to its findings of fact and reviewing its legal conclusions de novo.'" *Id.* (quoting *Goff v. Panos*, 2022 ND 186, ¶ 6, 981 N.W.2d 909). This Court must affirm the Department's decision unless it determines a statutory ground for reversal is present. N.D.C.C. § 28-32-46; N.D.C.C. § 28-32-49 ("The judgment of the district court in an appeal from an order . . . of an administrative agency or the commission may be reviewed in the supreme court on appeal in the same manner as provided in section 28-32-46[.]"). Grounds for reversal include "[t]he order is not in accordance with the law[,]" "[t]he findings of fact made by the agency are not supported by a preponderance of the evidence[,]" and "[t]he conclusions of law and order of the agency are not supported by its findings of fact." N.D.C.C. § 28-32-46(1), (5), and (6).

[¶7] "Resolving underlying factual disputes is the exclusive province of the hearing officer." *Houn v. N.D. Dep't of Transp.*, 2000 ND 131, ¶ 6, 613 N.W.2d 29. In deciding whether an agency's findings of fact are supported by a preponderance of the evidence, "[w]e determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979). "A reviewing court must give deference to the hearing officer's findings of fact and may not make independent findings or substitute its judgment for that of the Department." *Lindstrom v. N.D. Dep't of Transp.*, 2019 ND 293, ¶ 4, 936 N.W.2d 42. The Department's conclusions of law are subject to full review. *Schlittenhart v. N.D. Dep't of Transp.*, 2015 ND 179, ¶ 14, 865 N.W.2d 825.

3

[¶8] Skobodzinski argues the hearing officer erred in finding he refused a chemical test under N.D.C.C. § 39-20-01, as required by N.D.C.C. § 39-20-05. Whether a driver has refused to submit to a chemical test presents a question of fact. *Gardner v. N.D. Dep't of Transp.*, 2012 ND 223, ¶ 15, 822 N.W.2d 55.

[¶9] Generally, "[f]ailure to submit to a test, whether by stubborn silence or by a negative answer, can be a refusal." *Gardner*, 2012 ND 223, ¶ 15 (quoting *Mayo v. Moore*, 527 N.W.2d 257, 260 (N.D. 1995)). "A physical failure to cooperate may also amount to a refusal." *Id.* (quoting *Mayo*, at 260); *see also Jorgenson v. N.D. Dep't of Transp.*, 498 N.W.2d 167, 168 (N.D. 1993) (affirming hearing officer's finding inability to give a blood test due to veins, refusal to provide a urine sample, and not "blow[ing] a proper sample" for the Intoxilyzer test was a refusal); *Geiger v. Hjelle*, 396 N.W.2d 302, 303 (N.D. 1986) (affirming hearing officer's finding purposely providing deficient samples constitutes a refusal). This Court has explained that "a driver is not permitted to avoid the potential consequences of test submission and to avoid the penalties of refusal by remaining ambivalent," and "[w]hen a driver creates ambiguity regarding whether he or she will submit to chemical testing, the driver cannot complain about any reasonable interpretation of the driver's words and actions by the officer." *Maisey v. N.D. Dep't of Transp.*, 2009 ND 191, ¶ 20, 775 N.W.2d 200 (cleaned up).

[¶10] Skobodzinski argues his actions show he was "confused" about his rights related to taking a chemical test, demonstrated by his mentioning constitutional rights. He also argues his statement that he was willing to take a blood test indicates he was not outright refusing a chemical test but, rather, did not understand the trooper's request.

[¶11] The hearing officer found Skobodzinski refused the chemical test. The hearing officer found that when the trooper requested Skobodzinski to take a chemical breath test, Skobodzinski stated he would take a blood test and refused the chemical test. The trooper informed him that he could change his mind. The hearing officer found that when the trooper checked in again with Skobodzinski

and requested he take a chemical test, Skobodzinski responded, "5th [A]mendment." When the trooper asked if he wanted an independent blood test, Skobodzinski again stated, "5th [A]mendment." The hearing officer found the trooper continued to check in with Skobodzinski during the safety check.

[¶12] We give deference to the hearing officer's findings. We conclude a reasoning mind reasonably could have determined the weight of the evidence from the entire record proved Skobodzinski refused to take the chemical test.

IV

[¶13] Skobodzinski argues the hearing officer erred in determining he was given a reasonable opportunity to speak with an attorney before taking a chemical test.

[¶14] This Court has long recognized a motor vehicle operator arrested for driving under the influence or being in actual physical control has a limited statutory right to consult with an attorney under N.D.C.C. § 29-05-20.[1] *See Kuntz v. State Highway Comm'r*, 405 N.W.2d 285, 290 (N.D. 1987) (applying predecessor statute); *Weber v. Henke*, 2024 ND 37, ¶ 7, 4 N.W.3d 238 (applying current statute); *see also City of Jamestown v. Schultz*, 2020 ND 154, ¶ 22, 946 N.W.2d 740 (McEvers, J., concurring) (citing cases applying the *Kuntz* holding since section 29-05-20 was revised in 2005). In *Kuntz*, this Court held that under N.D.C.C. § 29-05-20, a person arrested for driving under the influence who asks to consult with an attorney before deciding to take a chemical test "must be given a reasonable opportunity to do so if it does not materially interfere with the administration of the test." 405 N.W.2d at 290. This limited statutory right "is a qualified right which cannot be used to materially hamper the process of administering the chemical test under Chapter 39-20, N.D.C.C." *Id.* "A failure to provide a reasonable opportunity to consult with counsel after the arrestee requests as much disallows the Department from revoking the arrestee's driver's license

_____

[1] N.D.C.C. § 29-05-20 provides: "The accused in all cases must be taken before a magistrate without unnecessary delay, and any attorney at law entitled to practice in the courts of record of this state, at the request of the attorney or the accused, may visit the accused after the accused's arrest."

under N.D.C.C. ch. 39-20 based upon the arrestee's refusal to submit to chemical testing." *Washburn v. Levi*, 2015 ND 299, ¶ 8, 872 N.W.2d 605; *see Kuntz*, at 290 (providing when an arrested person is not given a reasonable opportunity to consult with an attorney before deciding to take a chemical test, "his failure to take the test is not a refusal upon which to revoke his license under Chapter 39-20, N.D.C.C."). In considering whether a person has refused to take a test warranting revocation of a driver's license, "the hearing officer must first determine whether the driver has been offered a reasonable opportunity to consult an attorney." *Evans v. Backes*, 437 N.W.2d 848, 850 (N.D. 1989).

[¶15] Whether a person has been provided a reasonable opportunity to speak with an attorney is a mixed question of law and fact. *Weber*, 2024 ND 37, ¶ 6; *Maisey*, 2009 ND 191, ¶ 14. We determine whether a person has been afforded a reasonable opportunity to speak with an attorney "by conducting an objective review of the totality of the circumstances." *Weber*, ¶ 6 (quoting *Maisey*, ¶ 14). There are no "bright line rules" for making this determination. *Bell v. N.D. Dep't of Transp.*, 2012 ND 102, ¶ 20, 816 N.W.2d 786; *Lies v. Dir., N.D. Dep't of Transp.*, 2008 ND 30, ¶ 10, 744 N.W.2d 783. "The appropriate inquiry is whether the police afforded [an arrestee] a reasonable opportunity to consult with counsel in a meaningful way." *Schultz*, 2020 ND 154, ¶ 7 (quoting *State v. Ruden,* 2017 ND 185, ¶ 14, 900 N.W.2d 58). While we give deference to the Department's findings, "[o]nce the facts are established, their significance presents a question of law, which we review de novo." *Schoon v. N.D. Dep't of Transp.*, 2018 ND 210, ¶ 7, 917 N.W.2d 199 (quoting *McCoy v. N.D. Dep't of Transp.*, 2014 ND 119, ¶ 8, 848 N.W.2d 659).

[¶16] Here, the Department hearing officer determined Skobodzinski had a reasonable opportunity to contact an attorney. The hearing officer found Skobodzinski asked to speak with a supervisor and an attorney at 10:58 a.m.; he was allowed to speak with a supervisor and was told he would be given the opportunity to speak with an attorney at the jail in Dickinson; and on arriving at the law enforcement center at 12:05 p.m., the trooper placed Skobodzinski in an interview room and gave him access to a phone and access to the internet and a phonebook. The hearing officer found the trooper allowed Skobodzinski time to make phone calls and Skobodzinski stated he had no further questions.

[¶17] Skobodzinski argues he was not afforded a reasonable opportunity to speak with a lawyer under the totality of the circumstances. He challenges the trooper's decision to allow him to immediately speak with a supervisor but not allow him to speak with an attorney at the same time. Skobodzinski contends it was not reasonable or meaningful for the trooper to allow him to contact an attorney over an hour later, after the trooper completed the inspection and paperwork at Beach and transported him to Dickinson, and after the two-hour period had expired in which he could have "cured" his refusal to take a chemical test.

[¶18] Skobodzinski contends the trooper could have taken him to the Golden Valley Sheriff's Department for testing which was "minutes away" from the inspection station. He further asserts the trooper could have used the same phone to call an attorney right after the phone call with the supervisor, provided Skobodzinski with his cell phone, or allowed him to use the office phone in Beach. He argues the trooper's decision to wait until arriving at the law enforcement center in Dickinson to allow him the opportunity to speak with counsel was not reasonable. He asserts the trooper deprived him of any chance to "cure" his refusal by waiting until over two hours had passed since the time of driving to allow him the opportunity to contact an attorney.

[¶19] Although we have not adopted "bright line rules" for determining whether a "reasonable opportunity" to consult with an attorney has been afforded, this Court has "done away with case-by-case determinations that are often a matter of subjectiveness" to decide "whether an arrestee requested an attorney for purposes of determining whether to consent to chemical testing[.]" *Washburn*, 2015 ND 299, ¶ 9. In *Baillie v. Moore*, this Court articulated a "bright-line standard" for considering a purported request for an attorney:

> [W]e hold that if a DUI arrestee, upon being asked to submit to a chemical test, responds with any mention of a need for an attorney— to see one, to talk to one, to have one, etc.—the failure to allow the arrestee a reasonable opportunity to contact an attorney prevents the revocation of his license for refusal to take the test. A refusal to take the test under these conditions is not the affirmative refusal necessary to revoke a license under § 39-20-04, N.D.C.C.

522 N.W.2d 748, 750 (N.D. 1994) (holding driver's rights violated when officer interpreted request to contact attorney as a refusal to take chemical test). "Under this standard, if 'the arrestee responds with any affirmative mention of a need for an attorney, law enforcement personnel must assume the arrestee is requesting an opportunity to consult with an attorney and must allow a reasonable opportunity to do so.'" *Washburn*, ¶ 9 (quoting *Baillie*, at 750). We explained that an arrestee's request to speak with an attorney must be unambiguous, but law enforcement must seek clarification of an ambiguity before denying the statutory right to counsel, even when a request for an attorney is ambiguous. *Id.* ¶ 13.

[¶20] Here, the hearing officer did not find Skobodzinski's request to speak to an attorney was ambiguous. The hearing officer found Skobodzinski asked to speak with a supervisor and an attorney at 10:58 a.m. and was only allowed to speak with a supervisor at that time. Skobodzinski was allowed the opportunity to contact an attorney over an hour later, at 12:05 p.m. Whether this delay in allowing Skobodzinski to exercise his statutory right to consult an attorney rendered his opportunity to do so objectively unreasonable or meaningless depends on the totality of circumstances.

[¶21] This Court has stated:

> Under North Dakota law, a chemical test to determine a driver's blood-alcohol concentration must be given within two hours of driving if it is to be used to support imposition of an administrative sanction or as evidence of a 'per se' violation under N.D.C.C. § 39-08-01(1)(a), and a driver's refusal to submit to a test will result in the revocation of driving privileges for up to three years.

*Wetzel v. N.D. Dep't of Transp.*, 2001 ND 35, ¶ 15, 622 N.W.2d 180.

[¶22] The implied consent statutes are intended to encourage, rather than discourage, taking the screening and chemical tests. *See Krehlik v. Moore*, 542 N.W.2d 443, 445-47 (N.D. 1996) (discussing legislative intent of implied consent laws to encourage drivers to take chemical tests). We have long interpreted the implied consent statutes to provide for a driver's ability to "cure" a refusal to

take a chemical test by later agreeing to take the same test. *Id.*; *see, e.g., Grosgebauer v. N.D. Dep't of Transp.*, 2008 ND 75, ¶¶ 13-14, 747 N.W.2d 510; *Burley v. N.D. Dep't of Transp.*, 1999 ND 232, ¶ 8 n.1, 603 N.W.2d 490; *N.D. Dep't of Transp. v. DuPaul*, 487 N.W.2d 593, 597 (N.D. 1992); *Kuntz*, 405 N.W.2d at 289; *Asbridge v. N.D. State Highway Comm'r*, 291 N.W.2d 739, 749-50 (N.D. 1980); *Lund v. Hjelle*, 224 N.W.2d 552, 556-57 (N.D. 1974). In *Lund*, this Court provided criteria for a driver's ability to "cure" after first refusing to submit to a chemical test and later requesting a test:

> [T]he subsequent consent to take the test cures the prior first refusal when the request to take the test is made within a reasonable time after the prior first refusal; when such a test administered upon the subsequent consent would still be accurate; when testing equipment or facilities are still readily available; when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

224 N.W.2d at 557; *see also Houn*, 2000 ND 131, ¶ 9 (summarizing test stated in *Lund*). In *Lund*, the driver was arrested for driving under the influence; agreed to take a chemical test but refused once at the hospital; and was taken to the police station where he changed his mind after speaking with his insurance agent. *Lund*, at 554. The driver requested to take a test about an hour after his arrest, which was denied. *Id.* at 554-55. This Court held the driver cured his refusal and reversed the revocation. *Id.* at 556-57. The *Lund* criteria must be applied "strictly and rigidly." *Asbridge*, at 750.

[¶23] The legislature had not yet enacted the two-hour period in N.D.C.C. § 39-20-04.1 when *Lund* was decided. *See Krehlik*, 542 N.W.2d at 445. But we later said that while "the two-hour limitation for a chemical test in N.D.C.C. § 39-20-04.1 may narrow the reasonable period of time within which arrested persons may change their mind," the two-hour period does not refute *Lund's* underlying rationale, "which recognizes a legislative preference for a chemical test." *Houn*, 2000 ND 131, ¶ 15 (discussing *Krehlik*, at 447). In *Krehlik*, at 447, this Court reversed and remanded to the Department "[b]ecause the hearing officer did not

make a finding as to whether the test could reasonably have been taken before the expiration of the two-hour period[.]"

[¶24] In *Houn*, this Court declined requiring law enforcement to honor an attempt to cure when there is a "theoretical possibility" a chemical test could be completed within two hours:

> Although the Legislature has expressed its desire for suspects to take a chemical test, *Lund*, *Asbridge*, and *Krehlik* do not require law enforcement officers to honor an attempted cure if the officers reasonably believed it was not possible to do a test within the appropriate time frame, testing facilities were not readily available, and trying to obtain a test would have caused substantial inconvenience or expense to law enforcement. . . . Under *Lund* and its progeny, the standard is whether the proffered test reasonably could have been taken before the expiration of the two-hour period. Here, the hearing officer found the test could not have reasonably been completed within the two-hour period. Under our deferential standard of review, a reasoning mind reasonably could have found as the hearing officer did.

2000 ND 131, ¶ 18 (driver attempted to cure refusal with only twenty minutes left of the two-hour testing period); *see also Maisey*, 2009 ND 191, ¶ 26 (reasoning mind could conclude driver did not cure refusal when submitting to the test was conditioned on him first speaking with a specific attorney, whom he had previously been given the opportunity to call and left a message on the answering machine); *Grosgebauer*, 2008 ND 75, ¶ 15 (reasoning mind could conclude driver's statement "I did not refuse" after previously refusing to take the test was not an unambiguous request to take the test).

[¶25] In *Boyce v. Backes*, 488 N.W.2d 45, 47 (N.D. 1992), this Court specifically rejected using the statutory two-hour period as the "benchmark" to measure the reasonableness of the opportunity to contact an attorney. Boyce argued, "[I]f a test can reasonably be performed in ten minutes, there is no reason why an arrestee would not have one hour and fifty minutes to consult with an attorney." *Id.* This Court disagreed and explained:

10

It is not appropriate to measure the reasonableness of an accused's opportunity to contact an attorney by the maximum amount of time that the police may have to administer the most useful test to prove a licensee's intoxication. In some cases, to do so would unduly delay and extend the booking, observation, and testing processes.

Because circumstances vary, this Court declined to fix a certain amount of time for contacting an attorney. *Id.* Rather, this Court stated, "The standard is reasonableness under the circumstances." *Id.*

[¶26] In *Wetzel*, this Court reiterated the standard from *Boyce*, considered the totality of the circumstances, and concluded a reasoning mind could find Wetzel was afforded a reasonable amount of time to contact an attorney. 2001 ND 35, ¶¶ 16-20. This Court wrote the record showed:

Wetzel was arrested at 1:18 a.m.; Officer Sullivan lent Wetzel his personal cellular telephone to contact an attorney; Wetzel was given 25 minutes to contact an attorney; Wetzel made six telephone calls during the 25 minutes, including twice calling his wife; Officer Sullivan also dialed the residential telephone numbers of two attorneys for Wetzel; Wetzel testified Officer Sullivan was helpful when Wetzel was trying to contact an attorney; during the time he was allowed to try to contact an attorney, Wetzel discussed various aspects of his life with Officer Sullivan; and approximately one hour remained in which to secure a chemical test.

*Id.* ¶ 20. In determining Wetzel's limited statutory right to contact an attorney was not denied, we also refused to hold as a matter of law the back seat of the police car is an inherently coercive environment. *Id.* ¶ 21. In discussing other relevant totality-of-the-circumstance factors, we concluded Wetzel had ample opportunity to cure his refusal to take the test by consenting to testing and noted the record was "devoid of any evidence" suggesting he tried to contact an attorney from jail, renewed his request to contact an attorney, or subsequently consented to a test. *Id.* ¶ 24. We further noted the record was "silent regarding how long it would have taken to administer a chemical test if Wetzel had consented either initially or by curing his refusal." We explained, "This fact is important because part of the totality of the circumstances is the length of time needed to administer the test. Clearly this fact has an impact on the

11

determination of whether a reasonable opportunity to contact an attorney was afforded." *Id.* ¶ 25.

[¶27] In this case, the Department contends the trooper did not deny Skobodzinski his right to counsel because there is no evidence in the record Skobodzinski made an affirmative request for counsel "in connection with" the trooper's request for chemical breath testing. Rather, the Department asserts the record shows Skobodzinski's request to speak to an attorney occurred approximately 54 minutes after he refused to submit to the requested chemical breath test. The Department further contends the "uncontroverted facts" show Skobodzinski refused to take the test long before his request to speak to an attorney.

[¶28] The hearing officer found the trooper contacted Skobodzinski at 9:42 a.m. The record shows the trooper arrested Skobodzinski at 10:01 a.m. The trooper testified, and the hearing officer found, the trooper told Skobodzinski to let him know if at any point he changed his mind about taking the chemical test. The hearing officer found Skobodzinski asked to speak to a supervisor and an attorney at 10:58 a.m. Though not noted by the hearing officer, the trooper testified that during his conversation with another trooper, the troopers talked about Skobodzinski having the right to cure his refusal if he wanted to. The troopers allowed Skobodzinski to speak with a supervisor, but did not give him the opportunity to speak with an attorney at that time. The trooper did not give Skobodzinski the opportunity to contact an attorney until they arrived at the law enforcement center in Dickinson at 12:05 p.m. While not noted by the hearing officer, the trooper conceded he was aware that an Intoxilyzer machine was at the Golden Valley Sheriff's Office, which was "minutes away from the scale" in Beach.

[¶29] Although the right to speak to an attorney and the right to cure a refusal may be intertwined, they are separate and distinct issues. This case does not directly concern Skobodzinski's right to cure his original refusal to take the chemical test; the record does not indicate Skobodzinski made an unambiguous request to take the test and cure his refusal. A driver's request to speak to an attorney after an initial refusal does not, in and of itself, constitute a request to

cure an earlier refusal. Here, the issue is whether the trooper provided Skobodzinski a reasonable opportunity to speak with an attorney under the facts of this case. Though not controlling, one relevant factor under this inquiry is whether a driver still has time to cure an earlier refusal to take the requested test.

[¶30] Under the specific facts of this case, we conclude the trooper did not provide Skobodzinski a reasonable opportunity to speak with an attorney. Several facts are significant to and support that conclusion. First, after the trooper told Skobodzinski he could change his mind about taking the chemical test at any point, Skobodzinski unambiguously requested the opportunity to contact an attorney. Second, there is no evidence indicating that granting Skobodzinski's request to speak to an attorney would have delayed or extended the booking or observation processes. After the arrest, the trooper spent significant time doing paperwork and completing the inspection before transporting Skobodzinski to Dickinson. The trooper continued doing those tasks after Skobodzinski requested to speak to an attorney. Moreover, the troopers permitted Skobodzinski to speak with a supervisor, indicating permitting him to speak with an attorney would not delay or interfere in the booking or observation processes. Next, the troopers could have easily provided Skobodzinski the opportunity to speak with an attorney. This is evidenced by the fact the troopers had a phone available and provided it to Skobodzinski so he could speak with a supervisor. Thus, there is no indication that granting Skobodzinski's request to speak to an attorney would have been burdensome or impacted the inspection or duties of the troopers. Finally, the troopers knew Skobodzinski could request to cure his prior refusal, and even discussed it. The record indicates Skobodzinski may have had time to cure his prior refusal had the troopers permitted Skobodzinski to speak with an attorney when he requested, rather than over an hour later. The hearing officer did not find how long it would have taken to administer a chemical test had Skobodzinski requested to take a test. However, the record shows an Intoxilyzer machine was only "minutes away."

[¶31] The Department suggests that when requesting to consult an attorney after initially refusing, the driver must indicate to the trooper a desire to change his mind and cure his initial refusal. According to the Department, had

13

Skobodzinski informed the trooper "he was changing his mind regarding chemical testing as he had been instructed" to do, and "then been denied the right to cure his refusal due to the two-hour testing time limit passing," he would "possibly have a valid claim." However, one of the reasons an arrested driver has a limited right to consult with an attorney is to help the driver decide whether to take the test. Here, the trooper told Skobodzinski he could change his mind about taking the chemical test at any point. The timing of a driver's request to speak to an attorney may be a relevant, and sometimes significant, factor in determining whether an arresting officer provided the driver a reasonable opportunity to speak with an attorney; however, it is not controlling. *See Boyce*, 488 N.W.2d at 47 (recognizing "[c]ircumstances will vary[,]" and stating "[t]here is no rule that a police officer notify an accused about how long he may have to contact an attorney"); *see also Bell*, 2012 ND 102, ¶ 22 (stating "[b]ecause circumstances will vary, we decline to require law enforcement to inform a DUI arrestee when the two-hour period for chemical testing will expire"); *Wetzel*, 2001 ND 35, ¶ 16 (stating "[b]ecause circumstances vary, we declined to fix a certain amount of time for contacting an attorney. . . . the standard is reasonableness under the circumstances"). "Simply put, the linchpin for determining if police have given an accused a meaningful opportunity for contacting an attorney is reasonableness under the circumstances." *Eriksmoen v. Dir., N.D. Dep't of Transp.*, 2005 ND 206, ¶ 14, 706 N.W.2d 610 (quoting *State v. Berger*, 2001 ND 44, ¶ 18, 623 N.W.2d 25); *cf. Bell*, ¶ 21 (noting "that a DUI arrestee generally should not be held at the scene of a stop until the two-hour period has nearly expired and caution[ing] that law enforcement must not prolong a DUI investigation or delay giving an implied consent advisory to limit an arrestee's time to contact an attorney").

[¶32] Further, to the extent the Department argues that, to be effective, Skobodzinski must make his request for an attorney "in connection with" informing the trooper he was changing his mind to take a chemical test and cure a prior refusal, we rejected a similar argument in *Washburn*, 2015 ND 299, ¶¶ 16-17 (rejecting argument "Washburn's request for counsel was ineffective because it occurred after the arresting officer deemed Washburn to have refused chemical

14

testing and the request for counsel was unrelated to the decision of whether to submit to chemical testing").

[¶33] Based on the record and hearing officer's findings of fact, we conclude the trooper did not provide Skobodzinski a reasonable opportunity to speak with an attorney. Thus, the hearing officer's conclusion the trooper provided Skobodzinski a reasonable opportunity to speak with an attorney is not supported by the findings of fact and the order revoking Skobodzinski's driving privileges is not in accordance with the law. N.D.C.C. § 28-32-46(1), and (6).

V

[¶34] We reverse the district court's judgment and hearing officer's decision revoking Skobodzinski's driving privileges.

[¶35] Daniel J. Crothers
Lisa Fair McEvers
Douglas A. Bahr

**Jensen, Chief Justice, concurring.**

[¶36] I concur in the result reached by the majority because of the manner in which the issues were presented by the parties and the lack of a direct challenge to this Court's prior holdings that determined a motor vehicle operator arrested for driving under the influence or being in actual physical control has a limited statutory right to consult with an attorney under N.D.C.C. § 29-05-20. *See Kuntz v. State Highway Comm'r*, 405 N.W.2d 285, 290 (N.D. 1987) (applying the predecessor statute to provide a right to consult with counsel); *Weber v. Henke*, 2024 ND 37, ¶ 7, 4 N.W.3d 238 (applying current statute). I continue to share the concern previously expressed by Justice Tufte regarding this Court's interpretation of section 29-05-20. *See City of Jamestown v. Schultz*, 2020 ND 154, ¶¶ 12-14, 946 N.W.2d 740 (Tufte, J., concurring; Jensen, C.J., joining); *Jesser v. N.D. Dep't of Transp.*, 2019 ND 287, ¶¶ 19-22, 936 N.W.2d 102 (Tufte, J., concurring; Jensen, J., joining). Despite those prior concurrences, and the invitation to challenge the correctness of this Court's interpretation of section 29-05-20, *see Jesser*, ¶ 22 (Tufte, J., concurring; Jensen, J., joining) ("With full briefing

and argument in a future case, we may wish to reconsider whether *Kuntz* remains good law . . . ."), the State did not raise the issue in this case. Until the issue is appropriately raised and briefed, we will refrain from reconsideration of our interpretation of N.D.C.C. § 29-05-20.

[¶37]  Jon J. Jensen, C.J.
        Jerod E. Tufte